PITTWAY CORPORATION,
Plaintiff-Appellee,

v.

LOCKHEED AIRCRAFT
CORPORATION,
Defendant-Appellant.

No. 80–1408.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1980.
Decided Feb. 23, 1981.
Rehearing Denied April 13, 1981.

---

Willis R. Tribler, Haskell & Perrin, Chicago, Ill., for defendant-appellant.

Lowell J. Noteboom, Minneapolis, Minn., for plaintiff-appellee.

Before CUMMINGS and WOOD, Circuit Judges, and BARTELS, Senior District Judge.*

CUMMINGS, Circuit Judge.

This diversity suit was brought in the federal District Court for the Northern District of Illinois by the Pittway Corporation (Pittway) against Lockheed Aircraft Corporation (Lockheed) for the cost of repair incurred by Pittway as a result of a cracked mainframe in a jet aircraft designed and

*The Honorable John R. Bartels, Senior District Judge of the Eastern District of New York, is sitting by designation.

manufactured by Lockheed and for the economic loss resulting from the inability to use the aircraft during the period when it was being repaired. The district court held that the case is governed by Wisconsin law, which permits recovery of purely economic damages in product liability tort actions, and the jury returned a verdict awarding Pittway damages of $48,678.81. Lockheed appeals, contending that the case is governed by Illinois or Georgia law, both of which bar recovery of the damages sought. We conclude that Illinois law is governing and therefore reverse.

I

The facts relevant to this appeal are not in dispute. Pittway is a Pennsylvania corporation with its principal place of business in Northbrook, Illinois. It is engaged in the manufacture and sale of a variety of products and does business in all states through its several divisions. It has facilities in Illinois, New York, Ohio, Connecticut and Wisconsin. The Wisconsin facility, employing about 100 persons, is in no way connected to the present litigation.

Lockheed, a California corporation, is in the business of designing, manufacturing and selling, *inter alia*, jet airplanes, including the Lockheed Jetstar. The division of Lockheed that designed and manufactured the Jetstar has its principal place of business in Georgia. Lockheed's other principal operating division is located in California.

In 1969, Pittway purchased from Union Carbide Company a Lockheed Jetstar manufactured in Georgia during 1963 and 1964 and purchased by Union Carbide from Lockheed in 1964. Pittway took delivery of the Jetstar in Delaware and flew it to Illinois. Thereafter the aircraft was hangared at O'Hare Field in Chicago, Illinois. Pittway employed a full-time mechanic at O'Hare Field to perform routine maintenance and periodic inspections of the aircraft in accordance with a customized maintenance program described in manuals and

other documents sent to Pittway in Illinois from Lockheed in Georgia. Prior to 1975, the Jetstar was serviced on one occasion each in California, New York and Missouri and on eight occasions at K–C Aviation Company in Appleton, Wisconsin.

In December 1974, Lockheed learned that a crack caused by stress corrosion had been discovered in one of its Jetstars sold to the United States Air Force. In January 1975, Lockheed began issuing service bulletins advising Jetstar owners and operators to inspect mainframes for cracks. Upon receipt of the bulletins sent to Pittway's hangar at O'Hare Field, Pittway's mechanic there attempted without success to perform the recommended inspection. Pittway then decided to ferry the aircraft to K–C Aviation in Wisconsin for an inspection of the mainframe and other servicing. K–C Aviation personnel discovered a crack in the mainframe and made the necessary repairs. The Jetstar was out of service from May 6 to July 16, 1975, and then returned to Illinois.

On August 12, 1976, Pittway initiated this suit against Lockheed. The amended complaint, filed on July 24, 1978, contained three counts alleging claims for misrepresentation, strict liability and negligent design and manufacture respectively and seeking damages of $45,289 for the cost of repair and $75,000 for economic loss from loss of use of the Jetstar, a total of $120,289. The misrepresentation claim was subject at trial to a directed verdict in favor of Lockheed and is not in issue in this appeal. Lockheed moved before and during trial for judgment in its favor with respect to the strict liability and negligence counts on the ground that Illinois law does not permit recovery of economic losses under either theory against a manufacturer in the absence of personal injury or damage to property other than the allegedly defective product. The district court denied these motions, and the strict liability and negligence claims were submitted to the jury with instructions on Wisconsin law. As noted, the jury returned a verdict in favor of Pittway in the amount of $48,678.81 for the cost of repair and renting substitute aircraft. On February 27, 1980, the district court denied Lockheed's post-trial motion for judgment notwithstanding the verdict or a new trial and held that Wisconsin law was governing. This appeal followed.

II

Plaintiff selected Illinois as the forum for this lawsuit. In a diversity case, the governing choice-of-law principles are those of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Illinois applies the "most significant relationship" test of the Restatement (Second) of Conflict of Laws to determine the applicable law in tort actions. See *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970); see also *In Re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979*, 644 F.2d 594 at 611 (7th Cir. 1981). As applied in Illinois, this test embodies a presumption that the local law of the state where the injury occurred governs the rights and liabilities of the parties unless another state has a "more significant relationship" to the occurrence or parties involved. *Ingersoll, supra*, 262 N.E.2d at 595.

In determining whether another state has a more significant relationship with the litigation than does the place of injury, the contacts to be considered include the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered. *Ingersoll, supra*, 262 N.E.2d at 596; Restatement (Second) of Conflict of Laws § 145(2). However, as this Court recently cautioned in *In Re Air Crash Disaster, supra*, at 610–11, "application of choice of law rules is not a mechanical process of cranking various factors through a formula." The relative importance of all the alleged contacts, including the place of injury, must be independently evaluated on

a case-by-case basis with respect to the particular issue involved, the character of the tort, and the relevant policies of the interested states. *Ingersoll, supra,* 262 N.E.2d at 596; Restatement (Second) of Conflict of Laws §§ 6 and 145.[1]

■ The three states alleged by the parties to have significant relationships with this litigation are Georgia, where the conduct causing the injury occurred and where the Lockheed division that manufactured the Jetstar is located; Illinois, where Pittway's principal place of business is located and the relationship of the parties is centered;[2] and Wisconsin, where the aircraft was located at the time the crack was detected. However, as noted, there is no conflict between Illinois and Georgia law as to the recoverability of the damages sought here.[3] Thus if either Illinois or Georgia has a more significant relationship to the litigation than does Wisconsin, Illinois rather than Wisconsin law is applicable.

## III

■ As Pittway's counsel conceded at trial, the "place of injury in the classic sense of where did the accident happen is not a part of this case" because "the location of the aircraft at the time the crack occurred is indeterminate" (App. 54–55). Pittway nevertheless argues, and the district court agreed, that Wisconsin, the place where the defect was discovered, is the place of injury because discovery was the "last act necessary" to give rise to a cause of action against Lockheed.[4] Pittway further argues that neither Illinois nor Georgia has a more significant relationship to the litigation than does Wisconsin and that Wisconsin law is therefore applicable under *Ingersoll's* presumption in favor of the law of the place of injury. We reject this analysis for two reasons.

First, we are unpersuaded in the absence of any cited authority that an Illinois court would regard the place of discovery as the place of injury where the actual place of

1. Section 6 provides in pertinent part that the general factors relevant to choosing the applicable rule of law include:
   (a) the needs of the interstate and international systems,
   (b) the relevant policies of the forum,
   (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
   (d) the protection of justified expectations,
   (e) the basic policies underlying the particular field of law,
   (f) certainty, predictability and uniformity of result, and
   (g) the ease in the determination and application of the law to be applied.
   Section 145(1) sets forth the general principle that
   "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."
   Section 145(2) lists the four contacts to be taken into consideration in applying the principles of Section 6. They are (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Section 145 further provides that "[t]hese contacts are to

be evaluated according to their relative importance with respect to the particular issue."

2. The relationship of the parties in litigation involving an aircraft is generally centered on the aircraft itself. *E. g., Klondike Helicopters, Ltd. v. Fairchild Hiller Corp.,* 334 F.Supp. 890 (N.D.Ill.1971). Here the aircraft was hangared in Illinois, and the communications from Lockheed concerning maintenance of the aircraft were sent to Pittway at its hangar at O'Hare Field in Chicago.

3. We disagree with Pittway's suggestion that Georgia law may be "uncertain" on this issue. Recovery of economic loss under a negligence theory is plainly not allowable (*e. g., Long v. Jim Letts Oldsmobile, Inc.,* 135 Ga.App. 293, 294, 217 S.E.2d 602 (1975)), and an action for strict liability is maintainable only by natural persons. See *Mike Bajalia, Inc. v. Amos Construction Co., Inc.,* 142 Ga.App. 225, 235 S.E.2d 664, 666 (1977). Therefore, Pittway could not have prevailed in this suit under Georgia law.

4. As officers of the court, Lockheed's counsel should have informed us that they espoused a similar argument in *Hardly Able Coal Company, Inc. v. International Harvester Company,* 494 F.Supp. 249 (N.D.Ill.1980). However, the decision in that case does not, as Pittway suggests, support the applicability of Wisconsin law here. See note 7, *infra.*

injury is indeterminate.[5] Assuming that it is necessary in these circumstances to deem some place to be the place of injury, a more plausible argument can be made for deeming Illinois rather than Wisconsin the place of injury. The harm that Pittway suffered and for which it seeks to be compensated was purely economic and as such was sustained in Illinois, where Pittway's principal place of business is located and where the repair decision was made eventually resulting in all the damages claimed. Plaintiff was billed for the repairs at its Illinois office whence payment was made (see Plaintiff's Exh. 37). Of course, the Marcor Grumman substitute plane rental cost of $3,390 also emanated from there (see Plaintiff's Exh. 40). In addition, the loss of use of the aircraft in fact began in Illinois where the Jetstar was located when Pittway was notified by Lockheed of the need to take the aircraft out of service until an inspection for a possible defect could be completed. Alternatively, it could be argued that because of the similarity of this action to a breach of warranty claim, the place of injury should be deemed to be Georgia, where Lockheed breached its duty to manufacture a defect-free product. See, e. g., *O'Keefe v. The Boeing Co.,* 335 F.Supp. 1104 (S.D.N.Y.1971). If either Illinois or Georgia were deemed to be the place of injury or if the place of injury is, as we believe, indeterminate because it is unknown in what state the crack occurred, then all significant contacts in this litigation are outside Wisconsin and there is no basis whatsoever to argue that Wisconsin law is applicable.

 ■ Second, even if we were to agree that Wisconsin should be deemed the place of injury, we could not agree that it is the state with the most significant relationship to the litigation. It is widely recognized that the place of injury in cases involving aircraft accidents is almost always fortuitous, regardless of how often the aircraft had been flown over a particular area, and that the usual importance attached to the place of injury is therefore inappropriate. See generally, *Cousins v. Instrument Flyers, Inc.,* 44 N.Y.2d 698, 405 N.Y.S.2d 441, 443, 376 N.E.2d 914 (1978), and sources cited therein. The Restatement (Second) of Conflict of Laws, Section 145, subsection 2, comment (b), provides, for example, that where the place of injury is indeterminate or fortuitous the law of the place of misconduct, in this case Georgia, should be given greater weight. The situs of the aircraft in this case at the time the defect was detected cannot be regarded as any less fortuitous than the situs of an accident resulting from a defect. Even if it were foreseeable, as Pittway contends, that Pittway would have the Jetstar inspected and repaired at K–C Aviation in Wisconsin as opposed to other available facilities outside Wisconsin, the crack itself obviously could have occurred and been discovered, perhaps through a tragic accident, in any state over which the Jetstar was flown.

In view of the fortuity of the contact, Wisconsin, whether characterized as the place of injury or not, has little, if any, legitimate interest in the outcome of the litigation. The purpose of Wisconsin's rule allowing recovery of economic losses in tort is to insure that Wisconsin residents and therefore indirectly Wisconsin itself are protected against such losses. But Pittway does not have its principal place of business in Wisconsin and has not suffered any economic injury in Wisconsin. Georgia, on the other hand, does have a legitimate interest in the application of its law in this case. The policy underlying Georgia's rule barring recovery of the damages sought is to protect the economic well-being of Georgia manufacturers and indirectly the state by limiting the scope of potential liability for

---

5. *Williams v. Brown Manufacturing Co.,* 45 Ill.2d 418, 261 N.E.2d 305 (1970), on which the district court relied, is inapt. In *Williams,* the court held only that the statute of limitations in a personal injury action predicated on defective product design begins to run at the time the plaintiff first becomes aware of or should have become aware of his right to sue and not, as the defendant had argued, at the time the defective product leaves the hands of the manufacturer. We see no logical basis for reasoning from *Williams* that an Illinois court would use the place of discovery as a substitute for the place of injury in its choice-of-law analysis.

product defects to that established contractually by the parties. Since the Lockheed division that designed and manufactured the Jetstar has its principal place of business in Georgia, Lockheed is among those intended to be protected by the rule.[6]

Application of Wisconsin law in this case would thus result in the frustration of Georgia's policy, which is in accord with that of Illinois, without furthering the legitimate policy concerns of any other interested state. This is precisely the kind of illogical choice-of-law result that the Illinois Supreme Court sought to avoid by abandoning the old *lex loci delicti* rule, under which the law of the place of injury is always controlling, in favor of the more flexible "most significant relationship" test. Indeed, in *Ingersoll* itself, the court declined to apply the law of Iowa, which was indisputably the place of injury, because the situs of the injury was fortuitous and Iowa had no other contacts with the litigation.[7] Since Georgia and Illinois are the same, Illinois law is controlling here.

For the foregoing reasons, we conclude that the district court's application of Wisconsin law in this case is inconsistent with both the result and the principles enunciated in *Ingersoll*. Accordingly, the judgment is reversed.

---

6. Although Lockheed contends that either Georgia or Illinois has the most significant relationship to this litigation, California arguably has an interest similar to that of Georgia because that is where Lockheed is incorporated and has its other principal operating division. We note therefore that California law also bars recovery of purely economic losses in tort. *E. g., Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965).

7. The present case and *Ingersoll* are both distinguishable from *Hardly Able Coal Co., supra* note 4, on which Pittway relies. There the court applied Kentucky law to allow recovery of economic losses similar to those claimed here where the plaintiff was a Kentucky corporation doing all of its business in Kentucky, the defendant had its principal place of business in

Illinois, and the defective condition of the product involved (a bulldozer) manifested itself in Kentucky. Finding that Illinois' interest in protecting the defendant and Kentucky's interest in protecting the plaintiff were equally balanced and in direct conflict, the court concluded that Kentucky's interest as the place of injury tipped the scale in favor of application of Kentucky law. This Court in *In Re Air Crash, supra*, also resolved a direct conflict between interested states by using the place of injury as a tie breaker. Here we find no need to resort to a tie breaker because Wisconsin has no legitimate interest and the laws of the other interested states are not in conflict. Moreover, the place of injury in *Hardly Able* was neither indeterminate nor fortuitous since the bulldozer was never used outside Kentucky.