Ruben **GUILLERMO**, et al., etc., Plaintiffs,

v.

Thomas J. **BRENNAN**, et al., Defendants.

No. 86 C 8964.

United States District Court, N.D. Illinois, E.D.

July 22, 1988.

---

Sal Indomenico, John G. Phillips & Assoc., Chicago, Ill., for plaintiffs.

Mark D. Manetti, Manetti & Griffith Ltd., Oak Brook, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ruben and Elsa Guillermo (collectively "Guillermos"), administrators of the decedent's estate of their 12–year-old daughter Cynthia ("Cynthia"), have sued Thomas Brennan ("Brennan"), his employer City Wide Insulation of Madison, Inc. ("City Wide")[1] and Mark and George Murphy (collectively "Murphys") for various acts of negligence that allegedly caused Cynthia's death. City Wide and Murphys (for convenience collectively termed "Defendants," even though Brennan has not joined in their motion) have now moved for summary judgment under Fed.R.Civ.P. ("Rule") 56 on Guillermos' claims that Defendants were negligent in:

1. hiring Brennan without an adequate background investigation;

2. failing to fire Brennan; and

---

**1.** City Wide's submission on the current motion has informed this Court its corporate name is that stated in the text rather than "City-Wide Insulation, Inc.," as it is named in Guillermos' Complaint. This opinion will, of course, use the correct name.

3. entrusting Brennan with the use of a City Wide vehicle.

For the reasons stated in this memorandum opinion and order, Defendants' motion is granted.

### Facts [2]

This action invokes federal diversity jurisdiction: Guillermos are Illinois citizens, while all defendants are citizens only of Wisconsin. City Wide is a Wisconsin corporation engaged in the insulation contracting business, with its principal place of business in Wisconsin. Mark Murphy ("Mark") is City Wide's vice-president. His father George Murphy ("George") is its president, though he is no longer involved in its day-to-day operations (D.Mem. 13 [3]).

About May 1984 Mark hired Brennan to work as an insulation installer for City Wide. That hiring took place without any investigation of whether Brennan had a criminal record or of his past driving record (except for verifying that he had a valid current license), nor did Mark communicate with Brennan's prior employers. Guillermos say (and this opinion accepts) that such inquiries would have revealed that:

1. Brennan had three convictions for felony burglary charges and one on misdemeanor battery charges.

2. Brennan had held his three most recent jobs for periods of less than one year each.

3. Brennan's driver's license had been suspended by the State of Wisconsin in 1974 due to a "damage judgment" (D.Ex. J), and it had not been reinstated for more than seven years.

On March 11, 1985 Brennan, though intoxicated at the time, was driving a City–Wide-owned vehicle in Aurora, Illinois (Brennan Dep. II–7, 14 [4]). On the present motion, it has not been contested that Brennan collided with the vehicle carrying Cynthia (Brennan Dep. I–42–44). Two days later Cynthia died, apparently from injuries resulting from the accident.

Guillermos originally brought suit in an Illinois state court against Brennan, City Wide and the owners of the tavern at which Brennan had been drinking. Brennan was sued on negligence grounds, City Wide on a respondeat superior theory and the tavern owners under the Illinois Dram Shop Act, Ill.Rev.Stat. ch. 43, ¶ 135.

After Guillermos had twice amended their Complaint, City Wide moved for summary judgment. Guillermos settled with the other defendants before that motion was decided, then moved for voluntary dismissal of their claims against Brennan and

---

2. Rule 56 principles impose on the party moving for summary judgment the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986)). For that purpose this Court draws all "reasonable inferences, not every conceivable inference" in the light most favorable to the nonmovant—in this case Guillermos (*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987)). This statement of facts therefore reflects Guillermos' account of the relevant events where applicable. But Guillermos derive minimal benefit from that principle, having failed to respond to Defendants' statement of material facts as required by this District Court's General Rule 12(f). Under those circumstances General Rule 12(f) provides:

All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

See also *ITT Industrial Credit Co. v. D.S. America, Inc.*, 674 F.Supp. 1330, 1342 (N.D.Ill.1987).

3. This opinion refers to the parties' submissions as follows (in each instance "P." denotes Guillermos and "D." denotes Defendants):

1. Each memorandum will be identified by the party filing it, then by whether it is the original or (in Defendants' case) the reply memorandum and finally by the page reference.

2. Affidavit or deposition references will specify the name of the affiant or deponent, followed by the nature of the source ("Aff." or "Dep.") and the relevant paragraph or page.

3. Other exhibits tendered by Defendants will be cited "D.Ex.—"

4. Defendants' submission under this District Court's General Rule 12(e) will be cited "D. 12(e) ¶—."

4. Brennan gave two depositions in connection with the earlier state court case: Dep. I on June 18, 1986 and Dep. II on August 15, 1986. Defendants have also submitted two depositions by Mark: Dep. I taken September 2, 1986 for use in the state court lawsuit and Dep. II taken October 6, 1987 for use in this action.

City Wide. At the September 8, 1986 hearing on the parties' motions, Guillermos attempted for the first time to amend their Complaint by adding a claim against City Wide for negligent hiring.[5] Judge Helen Kinney granted City Wide's motion for summary judgment because Brennan was acting outside the scope of his employment at the time of his alleged negligence.[6] She then refused to allow Guillermos to add their claim for negligent hiring and granted their motion for voluntary dismissal against the remaining defendant, Brennan.

Guillermos filed this action in November 1986. Again Guillermos sued Brennan for his alleged negligent conduct and refocused their claim against City Wide to assert it was negligent both in hiring Brennan and in sending him off to Illinois in a company vehicle. This time Guillermos also leveled those claims against Murphys individually.[7]

### Contentions of the Parties

Defendants attack all the claims advanced against them. As to any asserted negligence in their hiring or failing to discharge Brennan, they say:

1. They owed Cynthia no duty of reasonable care in hiring or retaining Brennan.

2. If such a duty did exist, Guillermos have adduced no evidence to support a finding that Defendants were in breach of that duty.

3. Guillermos have also failed to create a genuine issue over whether any breach of duty by Defendants was the proximate cause of injury to Cynthia.

On the issue of negligent entrustment, Defendants say:

1. Guillermos have failed to demonstrate Brennan was unfit to be entrusted with a City Wide vehicle.

2. Any act or omission by Defendants was again not the proximate cause of the accident.

Guillermos' response touches first on the choice-of-law issue, which is relevant to whether Defendants were negligent in failing to inquire into Brennan's criminal history. For the rest, Guillermos submit a wide-ranging but unfocused set of contentions that material questions of fact exist over Defendants' negligence in hiring Brennan and entrusting him with a vehicle. Guillermos point mainly to Defendants' claimed breaches of a duty of reasonable inquiry before hiring Brennan and before allowing him to drive into Illinois unsupervised.

Finally, the parties also join battle over whether Mark and George can be individually liable for Guillermos' claims. Thus Mark and George pose all the issues applicable to City Wide plus defenses peculiar to them.

### Summary Judgment Standards

■ Though basic Rule 56 standards should be entirely familiar to every federal court litigator, some of them merit rehearsal for their potential impact on the current motion. In addition to the rules set out in n. 2, these principles are relevant here:

1. "Materiality" of a factual dispute turns on the fact being outcome-determinative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) phrased that concept this way:

> Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

2. Despite their burden as movants, Defendants must also prevail if Guillermos have failed to establish an essential element of their case (*Celotex*, 477 U.S.

---

**5.** Although labeled only in "negligent hiring" terms, that claim also contained allegations sufficient to support a claim for negligent entrustment (see *Teter v. Clemens*, 112 Ill.2d 252, 97 Ill.Dec. 467, 492 N.E.2d 1340 (1986)).

**6.** Judge Kinney's resolution of the scope of employment issue was dispositive of all Guillermos' then-pending claims against City Wide, be-

cause all those claims were premised on respondeat superior liability.

**7.** On March 21, 1987 this Court ruled the claims against Defendants were not barred by claim preclusion arising from the state court action (657 F.Supp. 216, 220).

at 322, 106 S.Ct. at 2552). As *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15 put it:

> Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial.... This is true even where the evidence is likely to be within the possession of the [movant], as long as the [nonmovant] has had a full opportunity to conduct discovery.

3. Relatedly, nonmovants such as Guillermos also lose if the evidence they present is insufficient as a matter of law. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)) has reconfirmed that:

> Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party there is no "genuine issue for trial."

*Matsushita* also teaches "metaphysical doubt" about the material facts of a case is insufficient to preclude summary judgment (*id.*, 475 U.S. at 586, 106 S.Ct. at 1355; see also *Beard v. Whitley County REMC*, 840 F.2d 405, 409–10 (7th Cir. 1988)).

### Application of the Standards

To prevail on their negligence theories against Defendants, Guillermos must prove "the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of that duty" (*Romano v.*

*Bittner*, 157 Ill.App.3d 15, 22, 510 N.E.2d 924, 929 (2d Dist.1987) (citations omitted)). To survive Defendants' summary judgment motion, then, Guillermos must demonstrate that at least genuine issues of fact exist as to each of those three elements for the two categories of negligence asserted.[8] Guillermos fail to meet their burden for either cause of action.

### 1. Negligent Hiring

Defendants' first argument against Guillermos' negligent hiring claim is that they did not owe plaintiffs' decedent Cynthia a duty of reasonable care in selecting Brennan (D.Mem. 5–7)—a kind of lack-of-foreseeability plus lack-of-proximate-cause contention. To be sure, foreseeability is a factor in determining whether a legal duty exists in any situation (see *Zimmerman v. Netemeyer*, 122 Ill.App.3d 1042, 1047, 78 Ill.Dec. 383, 386, 462 N.E.2d 502, 506 (5th Dist.1984)). But this line of argument is more properly addressed to the proximate cause element of the negligence analysis. Employers clearly must exercise reasonable care in selecting their employees (*Bates v. Doria*, 150 Ill.App.3d 1025, 1030, 104 Ill.Dec. 191, 195, 502 N.E.2d 454, 458 (2d Dist.1986) (citations omitted)):

> It is well established that a cause of action exists against an employer for negligently hiring, or retaining in his employment, an employee he knew, or should have known, was unfit for the job so as to create a danger of harm to third persons.

If Defendants arguably violated that standard as to Brennan, they put at risk third parties (such as Cynthia) who later came into contact with Brennan during the course of his employment.[9]

---

**8.** For this purpose Defendants' purported negligence in hiring Brennan and then retaining him as an employee may be treated as a single cause of action under the rubric of "negligent hiring" —there is no hint of any post-hiring information that would have called on Defendants to fire Brennan if the original hiring had been non-negligent.

**9.** This is not to suggest that a negligent hiring claim incorporates the same "scope of employment" inquiry as posed by a respondeat superior

claim (see *Gregor v. Kleiser*, 111 Ill.App.3d 333, 338, 67 Ill.Dec. 38, 42, 443 N.E.2d 1162, 1166 (2d Dist.1982)). But Guillermos will have to prove as part of their proximate cause showing that Cynthia's injuries were "brought about by reason of the employment of the incompetent servant" (*Bates*, 150 Ill.App.3d at 1031, 104 Ill.Dec. at 196, 502 N.E.2d at 459). And as with all proof of proximate cause, that means a direct causal relationship, not merely a temporal sequence.

Hence the inquiry must turn to whether Defendants did exercise their duty of care in hiring Brennan. At this point it becomes evident that choice of law comes into play.

As already stated, one of Guillermos' complaints is that Defendants made no pre-hiring inquiry into whether Brennan had a criminal record. In that respect Wisconsin law prohibits employers from refusing to hire an individual based on his or her arrest or conviction record (Wis.Stat.Ann. §§ 111.-31 to 111.335 (1988)). Under that statute an employer can inquire into an employee's criminal record and base an employment decision on that record only when "the circumstances of the charge substantially relate to the circumstances of the particular job or licensed activity" (*id.* § 111.335(1)(b)). Thus if Wisconsin law applies, Defendants were clearly justified in not requiring a check on Brennan's criminal record.

Because this Court sits in Illinois, in diversity cases it must follow this state's choice-of-law rules as the determinant of the applicable substantive law (*Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)). For tort claims Illinois courts have for some time looked to the law of the state with the "most significant contacts" to the case (*Ingersoll v. Klein*, 46 Ill.2d 42, 48, 262 N.E.2d 593, 596 (1970)). *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 526 (7th Cir. 1981) (citations omitted) relates the relevant considerations:

> In determining whether another state has a more significant relationship with

the litigation than does the place of injury, the contacts to be considered include the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered.

Those factors are weighed independently on a case-by-case basis (*id.* at 526–27).

■ Here the tort—the asserted negligent *hiring* of Brennan by Defendants— was plainly and exclusively a Wisconsin event, though the ultimate harm was felt by Cynthia a year later in Illinois. If City Wide's decision to hire Brennan were indeed negligent, that negligence took place in Wisconsin among parties all of whom were Wisconsin residents.

Guillermos can identify only one non-Wisconsin factor: their (and Cynthia's) Illinois citizenship. To be sure, Illinois also has an interest in seeing that competent employees are hired by companies in neighboring states when their duties may also carry them into Illinois (P.Mem. 6). But the effect of Guillermos' elevation of that interest to a primary position would be to subject Defendants to the potential of multiple conflicting duties.[10] On the undisputed facts of this case, there can be no disputing that Wisconsin has the "most significant contacts" in establishing the standard of care for Wisconsin-based City Wide's (and Wisconsin-based Murphys') decisions in the hiring and nonfiring of Wisconsin resident Brennan.[11] Hence Wisconsin law applies to Guillermos' negligent hiring claim.[12]

---

**10.** That effect is most dramatically illustrated by the fact that in Guillermos' view City Wide, a Wisconsin employer, would be compelled to violate a directly applicable provision of Wisconsin law—a statute creating serious exposure to liability in many respects—in order to insulate itself against some then-unknown future exposure to claims by some then-unknown persons in some then-unknown locations outside of Wisconsin. Merely to state that premise is to demonstrate its total untenability.

**11.** It is unnecessary to speculate as to whether any different result might arguably follow from some materially different set of facts—as for example the Wisconsin hiring of an employee

who is to render services only in another state (such as Illinois).

**12.** This just-completed analysis applies with less force to Guillermos' negligent entrustment issue. Again the relevant conduct by Defendants was their decision *in Wisconsin* to entrust Brennan with the use of a City Wide vehicle. Even so, this time Illinois' interest was stronger, for Brennan was given the truck specifically to drive into Illinois. But this Court need not resolve the somewhat more difficult choice-of-law issue posed by that set of facts. That is so because (as will appear later) no conflict appears to exist between the relevant principles of Wisconsin and Illinois law applicable to negli-

■ That being so, Guillermos cannot rely on Defendants' failure to look into Brennan's criminal record to support their negligent hiring claim. Even with the benefit of all reasonable favorable inferences, nothing even hints that Brennan's pre-hiring convictions "substantially relate" to the circumstances of his job with City Wide—the condition necessary to trigger the statutory exception to the prohibition against employers' inquiry into such convictions (Wis.Stat.Ann. § 111.335(1)(b)).

As for Defendants' other pre-employment omissions complained of by Guillermos, this opinion has already suggested the facts Defendants might have learned but did not:

I. Inquiries directed to Brennan's three most recent employers would have revealed he had worked for them for ten months, six to seven months and four to five months respectively (Brennan Dep. II–21–24).

2. Inquiry of the Wisconsin Division of Motor Vehicles would have shown Brennan's license was suspended in 1974 and not reinstated for seven years—but for a "damage judgment," not some matter reflecting reckless driving, drunken driving or the like (D.Ex.J).

Guillermos argue that information would have shown Brennan to be an unsuitable employee.[13]

For purposes of this opinion it will be assumed—though purely arguendo—that the just-stated facts would be enough to get to the jury on the issue of Defendants' breach of duty in hiring Brennan. That assumption requires a substantial amount of stretching, for it must be remembered that City Wide's hiring-nonfiring decisions related to whether Brennan was in fact unfit for employment as an insulation installer because of that prior history—certainly a doubtful proposition at best.[14] But the assumption may be made anyway, because it is so clear that any such assumed breach of Defendants' duty of care in hiring Brennan was not the proximate cause of injury to Cynthia.

In this respect there is precious little guidance in Wisconsin law: Research by both the parties and this Court has uncovered just one Wisconsin case dealing with a negligent hiring claim at all. *Linden v. City Car Co.*, 239 Wis. 236, 300 N.W. 925 (Sup.Ct.1941) dismissed such an action against a cab company, sued for negligently hiring a driver with a violent temper, because his assault on plaintiff (a train station porter) was insufficiently connected to the cab driver's employment (*id.* at 240, 300 N.W. at 927). Thus there is every reason to believe Wisconsin courts would endorse an explicit proximate cause inquiry in negligent hiring claims (see also *Robinson v. Mount Sinai Medical Center*, 137 Wis.2d 1, 15, 402 N.W.2d 711, 717 (Sup.Ct. 1987) (elements of a negligence action include "a causal connection between the [defendant's] conduct and the [plaintiff's] injury")).

■ Guillermos have not provided—or even suggested—any plausible causal link between Brennan's alleged deficiencies as a prospective or actual employee and the accident involving Cynthia. Absent any illustrative holdings from Wisconsin courts as to the kind of causal relationship that can give rise to negligent hiring or retention liability, this opinion turns to what the Illinois decisions in that area reflect.

City Wide and Murphys are not after all insurers for any and all harm that might have been caused by Brennan (see *Bates,* 150 Ill.App.3d at 1032, 104 Ill.Dec. at 196, 502 N.E.2d at 459). As *Fallon v. Indian Trail School,* 148 Ill.App.3d 931, 935, 102 Ill.Dec. 479, 481–82, 500 N.E.2d 101, 103–04

gent entrustment claims (see *International Administrators, Inc. v. Life Insurance Co. of North America,* 753 F.2d 1373, 1376 n. 4 (7th Cir.1985) ("Conflicts rules are appealed to only when a difference in law will make a difference to the outcome")).

13. Guillermos also complain of Defendants' failure to discover Brennan's earlier problems with

alcohol (P.Mem. 5–6). That issue will be discussed in the context of Guillermos' negligent entrustment claim.

14. This opinion will return to the issue of Brennan's competence in considering whether he was unfit to be entrusted with use of a City Wide vehicle.

(2d Dist.1986), *appeal denied*, 114 Ill.2d 544, 108 Ill.Dec. 416, 508 N.E.2d 727 (1987) (citations omitted) teaches:

> There are many kinds of unfitness for employment that do not give rise to tort liability for negligent hiring. The right of an employer to make decisions about the qualifications of his employees does not establish, *per se*, a right for negligent hiring. For example, employers may hire the mentally and physically handicapped, who have some degree of unfitness. Such employers, however, do not assume liability because of their employees' unfitness. Liability for negligent hiring arises only when a particular unfitness of an applicant creates a danger of harm to a third person which the employer knew, or should have known, when he hired and placed this applicant in employment where he could injure others.

Guillermos really misapprehend the nature of an employer's liability entirely. P.Mem. 7 cites to Restatement (Second) of Agency § 213, comment d (1958), which refers to an employer's potential liability for the "quality" of its employee. But it is necessary only to read that comment to see that it does not use "quality" in the generalized sense of an employee's being high-class. Quite to the contrary, "quality" denotes a particular *attribute* of an employee that the employer negligently overlooked (emphasis added):

> The principal may be negligent because he has reason to know that the servant or other agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. If the *dangerous quality* of the agent causes harm, the principal may be liable under the rule that one initiating conduct having an undue tendency to cause harm is liable therefor.

Guillermos' failure to provide the necessary causal relationship between any assumed breach by Defendants and the harm caused by Brennan is perhaps best illustrated by cases in which an employer *was* found potentially liable for negligence in hiring. *Gregor*, 111 Ill.App.3d at 338–39, 67 Ill.Dec. at 42, 443 N.E.2d at 1166, held a party host could be liable for hiring as a "bouncer" a man with a "reputation and vicious propensity for physical violence upon others," when that employee later assaulted one of the guests. In *Malorney v. B & L Motor Freight, Inc.*, 146 Ill. App.3d 265, 100 Ill.Dec. 21, 496 N.E.2d 1086 (1st Dist.1986) a trucking company hired an over-the-road driver who had previously been convicted of sexual assaults while driving for another trucking company. There the second employer was held responsible for failing to check into the driver's criminal record—but that was because he later raped a hitchhiker in the sleeping compartment of his truck (*id.* at 268–69, 100 Ill.Dec. at 23–24, 496 N.E.2d at 1088–89).[15]

In both those cases the employee's alleged unfitness was directly and obviously related to the way in which the third party was harmed. Here, by contrast, nothing even hints at how Brennan's alleged unfitness is related to his apparent wrongdoing with respect to Cynthia. Guillermos provide no information at all on the circumstances under which Brennan left his previous jobs [16] or why his license was suspended.

At best, the factfinder would be forced to speculate that those factors might reveal evidence suggesting a propensity for Brennan's using a vehicle in a negligent or reckless manner. But a proffer of speculation—and multilevel speculation at that—cannot withstand Defendants summary judgment motion.[17] As a matter of law,

---

**15.** Because Illinois has no counterpart to the Wisconsin statute discussed earlier in this opinion, there was no question of the employer's right to explore the driver's prior record.

**16.** In fact, the record provides a wholly neutral explanation for Brennan's departure from one of his prior positions. Brennan testified he left his job as a cabinet maker for Jerico Wood

Products when the company went into bankruptcy (Brennan Dep. II–23).

**17.** As with other issues already mentioned, the insufficiency of Guillermos' evidentiary showing is discussed further in the context of their negligent entrustment claim.

the evidence on which Guillermos rely is insufficient to raise a material factual question as to whether any purported negligence by Defendants in hiring (or not firing) Brennan was the proximate cause of Cynthia's death.[18]

## 2. Negligent Entrustment

Under both Illinois and Wisconsin law Defendants are potentially responsible for any negligence in allowing Brennan to use a City Wide vehicle. *Rosenberg v. Packerland Packing Co.*, 55 Ill.App.3d 959, 964, 13 Ill.Dec. 208, 212, 370 N.E.2d 1235, 1239 (1st Dist.1977) (citations omitted) states:

> Our courts recognize liability from the act of entrustment of a motor vehicle to one whose incompetency, inexperience or recklessness is known or should have been known by the owner or entruster of the vehicle.

*Bankert v. Threshermen's Mutual Insurance Co.*, 110 Wis.2d 469, 476–77, 329 N.W. 2d 150, 153 (Sup.Ct.1983) is to the same effect.

Defendants do not contest City Wide's duty to exercise reasonable care in affording Brennan the use of a company vehicle. They insist, however, that allowing Brennan to drive a City Wide truck to the job site in Illinois did not breach that duty.

■ On that score, all the evidence unquestionably establishes Defendants' reasonableness in permitting Brennan to drive a company vehicle and to take that vehicle to an Illinois job site. They did not entrust Brennan with any City Wide vehicle until several months after he was hired (D. 12(e) ¶ 19). Mark was responsible not only for hiring Brennan but for deciding to let him use a City Wide Truck (Mark Aff. ¶ 10)—and Mark had been told by Brennan's supervisor (Russ Jenkins ["Jenkins"],

a City Wide foreman) that Jenkins had observed Brennan to be a good driver (Mark Aff. ¶ 18; Jenkins Aff. ¶ 7). City Wide had received no complaints of any kind about Brennan before the March 1985 accident (Mark Dep. II–46). By all accounts he was a responsible and diligent employee (Mark Dep. I–22; Mark Dep. II–17, 20). City Wide also had no knowledge before the accident as to Brennan having an alcohol abuse problem (D.12(e) ¶ 16; Mark Aff. ¶ 20).

Guillermos have presented no evidence at all to undercut Defendants' reasonableness by creating a material issue of fact over their entrustment of a vehicle to Brennan. Guillermos refer only to the same information they cite in support of their negligent hiring claim. None of that evidence, either singly or in combination, raises a factual question whether Defendants breached a duty of reasonable care in allowing Brennan to drive.

As already noted (see n. 18), Brennan's prior criminal conduct is totally unrelated to his competency or responsibility as a driver. Similarly, here Guillermos can derive no better mileage from Brennan's short tenure in his earlier jobs than they obtained (or failed to obtain) on their negligent hiring claim. Guillermos have come forward with nothing to suggest the circumstances of Brennan's having left any prior job supports their negligent entrustment claim.[19]

As for Brennan's license suspension, that too cannot support a finding of negligence in City Wide's allowing him to drive. Guillermos cite only to Brennan's Wisconsin driving record, which shows a suspension due to a "damage judgment" and the reinstatement of his license seven years later.

---

**18.** This same proximate cause analysis would serve to defeat Guillermos' claim based on Defendants' failure to uncover Brennan's criminal background—wholly apart from the earlier-discussed Wisconsin employment discrimination law. Brennan had previously been convicted of burglary and battery. Hiring such an employee might subject his employer to liability if that employee then proceeded to commit a burglary, battery or closely related tort. No such proximate connection exists between Brennan's previous criminal conduct and his actions in driving under the influence of alcohol.

**19.** Indeed, once Brennan was hired Guillermos' reliance on this factor really loses force entirely. Any arguable adverse inference from his short tenure in prior jobs is wholly dispelled by his longer tenure with City Wide itself and by his irreproachable conduct as a City Wide employee —before the accident, of course.

Again Guillermos provide no information as to the circumstances of the suspension and the reasons for the long delay before Brennan regained his driving privileges.[20] Nothing but sheer conjecture could connect that suspension to reckless conduct or the use of alcohol by Brennan—and the term "damage judgment" suggests nothing of the sort.[21] Once more Guillermos cannot rest on their allegations but must come forward with evidence showing a genuine issue of *material* fact (*Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15). Brennan's one-time license suspension for "damage judgment," without additional evidence, "could not lead a rational trier of fact to find for the nonmoving party ..." (*Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356).

■ Finally, Guillermos raise the issue of Brennan's earlier problems with alcohol. But they have presented no information to suggest Defendants should have been on notice in that respect. Quite the contrary is true:

1. Brennan described his "drinking habits" while employed by City Wide this way (Brennan Dep. II–27):

> A. Because I had had difficulties with alcohol before in my life, I had been relatively abstinent, you know, not drinking at all. During the period I was working with City–Wide I did have a few lapses. These weren't a problem for me per se at that time.

Q. All right. Ever get you in trouble during that period of any kind with the company?

A. No.

Q. Okay, and when you say lapses, what do you mean by that?

A. I would take a drink.

Q. All right.

A. Not necessarily to drunkeness, but, you know, for me to take a drink was a lapse.

Q. All right, would that ordinarily occur on a weekend?

A. Yes.

2. Brennan also testified he had never been intoxicated in the presence of any City Wide employees or management personnel (Brennan Dep. I–48).

3. Jenkins swears that on the two or three occasions Brennan joined City Wide workers at a local bar, Brennan usually drank soft drinks and rarely drank beer (Jenkins Aff. ¶¶ 8–10).

4. Jenkins never observed Brennan to be intoxicated (*id.* at ¶ 11).

Based on this evidence, Defendants had no reason even to suspect—let alone know—Brennan had a latent drinking problem.

■ In sum, there is nothing to justify submission to the trier of fact of Guillermos' claim that Defendants were negligent in entrusting a City Wide vehicle to Brennan.[22] Defendants are entitled to summary judgment on that claim as well.[23]

---

20. Brennan's failure to regain his license until 1981 might perhaps be related to his imprisonment for his third burglary conviction from 1977 to 1982 (Brennan Dep. I–10). But this Court is not called on to speculate to fill the vacuum left by Guillermos' nonproduction of evidence.

21. If anything, that term connotes the withholding of driving privileges while a judgment is outstanding—a matter of financial responsibility, and not one bearing on what ultimately occurred here.

22. This holding that the standard of reasonable care was not breached on the negligent entrustment claim makes it unnecessary to go into whether such a breach would have been the proximate cause of Cynthia's death.

23. In light of this opinion, whether Mark and George can be liable as individuals for their

actions as City Wide officers becomes a moot issue. In the interests of full discussion, however, this Court notes Defendants have offered no authority for automatically immunizing Murphys as individuals for actions they may have taken as agents of the corporation—though they stand in different postures in factual terms. As for Mark, if his actions had indeed been tortious, he could have been subjected to personal liability for breaching his own duty of care—if he were found to owe one to Cynthia (a question not decided here) (see *Goldstein v. Scott*, 108 Ill.App.3d 867, 873, 64 Ill.Dec. 374, 379, 439 N.E.2d 1039, 1044 (1st Dist.1982) (corporate officer can be held liable for violating a duty he personally owes third person)). As for George, however, Guillermos have failed to tender any facts at all suggesting that he performed any act related to Guillermos' claims or failed to act in an area for which he had responsibility.

*Conclusion*

Needless to say, the tragic death of Guillermos' child, Cynthia, calls for great sympathy. But sympathy cannot trigger liability for those having no legal responsibility for that death. Guillermos and their counsel must face the bitter truth that blame for Cynthia's death cannot be placed at the doorstep of City Wide and Murphys. Any arguable lack of care in the decision to hire (or to retain) Brennan—a dubious assumption in any event—would not even arguably have been the proximate cause of the accident that caused Cynthia's death. Nor have Guillermos posed any material factual issue suggesting Defendants' failure to use reasonable care in entrusting Brennan with use of a City Wide vehicle.

In summary, there is no genuine issue of material fact, and defendants are entitled to a judgment as a matter of law. Accordingly this action is dismissed on the merits as to each of City Wide Insulation of Madison, Inc., Mark Murphy and George Murphy. Because that is fully dispositive of all claims against those defendants, this Court expressly determines there is no just reason for delay and therefore expressly directs the entry of final judgment in favor of each of those defendants (see Rule 54(b) and *National Metalcrafters v. McNeil,* 784 F.2d 817, 821 (7th Cir.1986)).

This action is set for a status hearing at 8:45 a.m. July 29, 1988. At that time the parties should be prepared to discuss how this case will proceed as to the remaining defendant, Brennan.