*In re* ESTATE OF RALPH BARNES, Deceased (Patricia Barnes, Petitioner and Counterrespondent-Appellant, v. Henry Barnes *et al.*, Respondents and Counterpetitioners-Appellees).

First District (1st Division)   No. 84—127

Opinion filed May 7, 1985.

362

Donald A. Shapiro, of Chicago, for appellant.

J. Michael Madda and Richard E. Alesky, both of Chicago, for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises out of a dispute concerning the distribution of proceeds obtained through the prosecution and settlement of a wrongful death action filed under the Michigan Wrongful Death Act (Mich. Comp. Laws Ann. sec. 600.2922 (West Supp. 1985).) The trial court held that Illinois had the most significant contacts with the dispute and therefore Illinois law should control the distribution. However, pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308), the trial court certified the question to this court whether Illinois or Michigan law should apply. We granted leave to appeal.

The record reveals that on August 7, 1979, Ralph Barnes suffered fatal injuries while working on a construction project in Flint, Michigan. He was survived by his estranged wife, Patricia Barnes, his father, Henry Barnes, and his aunt, Octavia James. Patricia and Ralph Barnes had been separated for approximately three years and were living separate and apart at the time of Ralph's death. Patricia had filed divorce proceedings in 1976, but the petition was later dismissed for want of prosecution. She also admitted that after they separated she had caused her husband to be arrested on at least two occasions. The father and the aunt had a close relationship with the decedent. The aunt served as a mother figure to him and was receiving financial

support from the decedent at the time of his death.

Patricia Barnes opened a probate estate in Illinois and was appointed administrator. In her representative capacity as administrator, Patricia filed a wrongful death action under the Michigan Wrongful Death Act (Mich. Comp. Laws Ann. sec. 600.2922 (West Supp. 1985)) in the United States District Court for the Eastern District of Michigan. All the named defendants were domiciled in Michigan, and Federal jurisdiction was based on diversity of citizenship.

On April 15, 1983, the Michigan attorney prosecuting the wrongful death action filed a petition for instructions with the circuit court of Cook County that had originally appointed Patricia administrator. Therein, the attorney stated that a $115,000 settlement offer had been made by the defendants in the Michigan lawsuit, and he recommended its acceptance. He further requested that the administrator be directed to execute settlement documents and that a distribution order be entered by the probate court, since there was a dispute amongst the various heirs of the estate. The Illinois court authorized the settlement. Patricia signed the settlement documents and caused the Michigan proceeding to be dismissed. After deduction for costs and attorney fees, $75,958.80 remained and is currently the only asset in dispute.

The Michigan probate code contains a specific statutory provision for the distribution of the proceeds of a Michigan wrongful-death action, whether they be obtained by judgment or settlement. (See Mich. Comp. Laws Ann. sec. 700.222 (West 1980).) The statute directs the personal representative of the deceased to file a "petition for authority to distribute the proceeds." In case of a settlement, the trial court then holds a hearing where all those named as beneficiaries under the wrongful-death statute are given an opportunity to prove damages. Under Michigan law, the class of persons entitled to recover includes all potential heirs of the decedent. (*Crystal v. Hubbard* (1982), 414 Mich. 297, 324 N.W.2d 869.) Unlike Illinois law, Michigan permits all potential heirs to recover for "lost companionship" as well as pecuniary loss. (*Crystal v. Hubbard* (1982), 414 Mich. 297, 324 N.W.2d 869; see also Mich. Comp. Laws Ann. sec. 600.2922(2) (West Supp. 1985) (giving specific authorization for recovery of loss of society and companionship of the deceased).) Following a hearing, the court is directed to distribute the proceeds "in such amounts as the court deems fair and equitable considering the relative damages sustained by each of the persons by reason of the decedent's wrongful death." Mich. Comp. Laws Ann. sec. 700.222(d) (West 1980).

Patricia never filed a petition for distribution in the Michigan

court system. Instead, she filed a petition to close the estate with the Illinois probate court and requested that the entire settlement be distributed to her. Her claim appears to be premised on the theory that the settlement is part of the personal estate of Ralph Barnes which was not disposed of by will. Accordingly, under the Illinois intestacy laws of descent and distribution, she would be entitled to the entire estate as the surviving spouse. Ill. Rev. Stat. 1983, ch. 110½, par. 2—1(c).

Subsequently, the father, Henry Barnes, and the aunt, Octavia James, filed a counterpetition asserting that the distribution of the proceeds of the Michigan wrongful-death action should be made according to Michigan law. Accordingly, both the aunt and the father would be entitled to damages for lost companionship to the extent they could prove injury. (*Crystal v. Hubbard* (1982), 414 Mich. 297, 324 N.W.2d 869; Mich. Comp. Laws Ann. sec. 600.2922(2) (West Supp. 1985).) The trial court found that Illinois had the most significant contacts with the dispute because all the beneficiaries were domiciled in Illinois. Accordingly, the trial court ordered that Illinois law should control the distribution of the wrongful-death proceeds. We vacate this order and remand for further proceedings.

The issue here is not so much whether Illinois or Michigan law should control, but rather what Illinois law, if any, could possibly apply to the distribution of a Michigan wrongful-death recovery. Two candidates present themselves for consideration—the Illinois intestacy laws of descent and distribution (Ill. Rev. Stat. 1983, ch. 110½, par. 2—1(c)) and those portions of the Illinois Wrongful Death Act governing distribution of proceeds recovered under the Act (Ill. Rev. Stat. 1983, ch. 70, par. 2). Neither of these statutes has any application to the case at bar. Thus, the Michigan statutory scheme for distribution is the only remaining logical choice.

Patricia Barnes implicitly contends that the wrongful-death recovery is an asset of the estate and therefore she, as the surviving spouse, is entitled to all the proceeds under the Illinois law of intestate succession. (See Ill. Rev. Stat. 1983, ch. 110½, par. 2—1(c) (providing that the surviving spouse takes the entire estate where there are no surviving descendants of the decedent).) This contention is clearly without merit.

■ The term "estate" as used in our probate act refers to all interests in property, real or personal, to which the *deceased* may be entitled. (*In re Estate of Rudder* (1979), 78 Ill. App. 3d 517, 519, 397 N.E.2d 556.) A cursory examination of the Michigan Wrongful Death Act reveals that, like our own statute, the Michigan act does not post-

humously award damages to the decedent. (See Ill. Rev. Stat. 1983, ch. 70, pars. 1, 2; Mich. Comp. Laws Ann. sec. 600.2922 (West Supp. 1985).) Rather, the purpose of the Michigan statute is to compensate those survivors designated in the Act for damages they suffered as a result of the wrongful death. Thus, the damages recovered under the Michigan statute are not intended as compensation to the decedent or his estate; they belong exclusively to the beneficiaries enumerated in the statute. (See *Carder v. Marhoff* (E.D. Mich. 1956), 143 F. Sup. 920 (applying Michigan law).) Accordingly, a wrongful-death recovery under the Michigan Act cannot be considered an asset of the estate and, therefore, cannot pass under our intestacy laws to the surviving spouse. Accord, *Carder v. Marhoff* (E.D. Mich. 1956), 143 F. Supp. 920 (applying Michigan law); *cf. Vukovich v. Custer* (1952), 347 Ill. App. 547, 107 N.E.2d 426, *rev'd on other grounds* (1953), 415 Ill. 290, 112 N.E.2d 712 (damages recovered under Illinois Wrongful Death Act are not part of decedent's estate); see also Ill. Rev. Stat. 1983, ch. 70, par. 2 ("every such action shall be for the exclusive benefit of the surviving spouse and next of kin").

The only other Illinois law which could apply to the case at bar would be the provisions of the Illinois Wrongful Death Act pertaining to the distribution of proceeds recovered under the Act. (Ill. Rev. Stat. 1983, ch. 70, par. 2.) Section 2 provides that, in the case of settlement, the circuit court shall distribute the proceeds to the surviving spouse and next of kin in the proportion "that the percentage of dependency of each such person upon the deceased bears to the sum of the percentages of dependency of all such persons upon the deceased person." (Ill. Rev. Stat. 1983, ch. 70, par. 2.) However, there is no indication that this statutory provision was ever meant to apply to anything other than recoveries obtained under our own wrongful-death statute.

■ Indeed, a contrary conclusion would lead to anomalous results. Under Illinois law, damages recoverable for wrongful death are set with reference to the pecuniary loss suffered by the surviving family members as a result of the death. (Ill. Rev. Stat. 1983, ch. 70, par. 2.) Accordingly, damages recovered are distributed to the beneficiaries based upon their economic dependence on the deceased, thereby resulting in an equitable distribution reflecting the damages each beneficiary suffered. However, the Michigan act emphasizes loss of companionship and injury to family relationships as a basis for awarding damages. (Mich. Comp. Laws Ann. sec. 600.2922(2) (West Supp. 1985).) As recently noted by the Michigan Supreme Court in *Crystal v. Hubbard* (1982), 414 Mich. 297, 325-26, 324 N.W.2d 869,

880:

"There exists \*\*\* an assumption that *some* positive relationship exists between almost all relatives. The wrongful death act, with its emphasis on compensating lost companionship, appears designed to compensate for the destruction of family relationships—those implicitly assumed to exist \*\*\* among family members identified as potential intestate takers."

Thus, under Michigan law the proceeds of a wrongful-death recovery are distributed among the beneficiaries in proportion to their loss as defined above. (Mich. Comp. Laws Ann. sec. 600.2922(2) (West Supp. 1985); sec. 700.222(d) (West 1980).) We believe it would be illogical to apportion the proceeds of this Michigan wrongful-death recovery under our own law and based upon economic dependence on the deceased where the settlement obtained reflects the Michigan law of damages, which is heavily weighted toward loss of society and destruction of family relationships, not pecuniary loss.

■ The same conclusion is reached utilizing conflict of laws principles. As Patricia correctly contends, Illinois has abandoned the traditional *lex loci delicti* choice-of-law rule in favor of "the most significant contacts rule embodied in the American Law Institute's second Restatement." (*Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593; Restatement (Second) of Conflict of Laws (1971).) Under the Restatement approach, when two or more jurisdictions have an interest in applying their law to a matter in controversy, the following factors are relevant in choosing which rule of law to apply:

"(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied." (Restatement (Second) of Conflict of Laws sec. 6 (1971).)

Where a conflict arises in the area of tort law, the Restatement requires that the law of the State that has "the most significant relationship to the occurrence and the parties under the principles stated in section 6" should be applied. (Restatement (Second) of Conflict of Laws sec. 145 (1971).) Important contacts that the forum will consider in determining the State with the most significant relation are:

"(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered." (Restatement (Second) of Conflict of Laws sec. 145 (1971).)

However, conflicts analysis under the second Restatement requires more than a mere tallying of contacts in each respective State and a comparison to determine which State has the highest total. Illinois courts have rejected this "contact counting" approach in favor of a more sophisticated "interest analysis" construction of the Restatement. (*Mitchell v. United Asbestos Corp.* (1981), 100 Ill. App. 3d 485, 426 N.E.2d 350.) As the court noted in *Mitchell*:

"This approach [interest analysis] is based on the conclusion that '[c]ontacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws.' (*Miller v. Miller* (1968), 22 N.Y.2d 12, 17, 290 N.Y. Supp. 2d 734, 738, 237 N.E.2d 877, 880; *In re Estate of Crichton* (1967), 20 N.Y.2d 124, 134-35, 281 N.Y. Supp. 2d 811, 820, 228 N.E.2d 799, 806.) Instead of a mere counting of contacts, what is therefore required is a 'consideration of the interests and public policies of potentially concerned states and a regard as to the manner and extent of such policies as they relate to the transaction in issue.' " (100 Ill. App. 3d 485, 493.)

Accordingly, sections 6 and 145 of the Restatement are construed together as requiring an examination of the relevant policies of the forum, the relevant policies of other interested States and the basic policies underlying the particular field of law in order to determine whether a contact has any significance for choice of law purposes. (*Mitchell v. United Asbestos Corp.* (1981), 100 Ill. App. 3d 485, 494, 426 N.E.2d 350.) This gives rise to a three-step process for conflicts analysis. First, the issue is isolated and the conflict defined. Next, the policies embraced in the laws in conflict are identified. Finally, contacts of the respective jurisdictions are examined in order to determine which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied. *Mitchell v. United Asbestos Corp.* (1981), 100 Ill. App. 3d 485, 494; *Miller v. Miller* (1968), 22 N.Y.2d 12, 16, 290 N.Y. Supp. 2d 734, 736, 237 N.E.2d 877, 879.

■ Applying these principles to the case at bar, we must first define the conflict. As previously described, to the extent that a conflict

may be said to exist between the distribution provisions of the Illinois and Michigan wrongful-death statutes, it may be defined as follows: Illinois requires that such proceeds be distributed in proportion to the economic dependence each beneficiary had on the decedent, but under Michigan law the proceeds are distributed in proportion to the loss, including loss of companionship each beneficiary suffered as a result of the wrongful death.

Next, we must identify the policies inherent in the conflicting laws. Here, the respective policies embodied in these statutes are the same. Both seek to have recoveries obtained for wrongful death distributed in a manner consistent with the relative damages sustained by each beneficiary. Differences between the two statutes with respect to distribution merely reflect differences between the Illinois and Michigan law of damages.

Finally, we must examine the contacts in light of these policies to determine their significance. Here, all the beneficiaries are Illinois domiciliaries, a fact upon which the trial court heavily relied in determining Illinois had the most significant contacts with the dispute. Within the area of tort law, the domiciles of the parties are generally considered significant contacts for conflicts analysis because a jurisdiction will normally formulate tort policies with reference to the competing interests of compensating its domiciliaries for injury and of limiting tort recoveries against its domiciliaries. Accordingly, there are strong incentives to apply the tort law of a jurisdiction where all the parties are domiciled because this contact bears a strong relation to the policies and purposes sought to be achieved in the jurisdiction's tort law. (See *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593 (Illinois tort law was held to apply in a case where all the parties were Illinois domiciliaries even though the place of the tort was Iowa).) The simple fact of domicile will be indicative of the jurisdiction's superior interest in having its laws applied in order to give effect to those tort policies.

However, in the present case, a recovery has already been obtained under the tort law of a foreign jurisdiction which we must apportion between Illinois beneficiaries. Here, we do not believe that the domicile of the beneficiaries is of any significance, because this contact bears no relation to the policies and purposes sought to be vindicated in the Illinois statute presently under consideration. There is no general policy embedded in our statute which seeks to direct the distribution of proceeds among Illinois-domiciled beneficiaries regardless of whether or not the recovery was obtained under our own statute. On the contrary, the policies inherent in the distribution provisions of the Illinois Act reflect the common-sense proposition that since a re-

covery in Illinois is premised on the beneficiaries' pecuniary loss, the proceeds should be distributed according to each beneficiary's economic dependence on the decedent. Thus, when damages are assessed under our statute, the Illinois distribution scheme will produce an equitable apportionment based upon the compensable damages each beneficiary suffered under our act. However, where damages have been assessed under the tort law of a foreign jurisdiction, the *post facto* superimposition of the Illinois distribution provisions will only frustrate the aim of equitable apportionment by failing to divide the proceeds according to the damages each beneficiary suffered under the foreign statute.

From the foregoing, we conclude that where a recovery has been obtained under the Michigan Wrongful Death Act which reflects the Michigan law of damages with its emphasis on lost companionship, no Illinois policy would be furthered by applying Illinois law to the distribution of the proceeds, regardless of the fact that all the beneficiaries are Illinois domiciliaries. Whatever differences in policy exist between Illinois and Michigan in the area of recoverable damages are irrelevant at this point. Damages have already been assessed under Michigan law through settlement of this lawsuit and our sole task is to apportion them in an equitable manner. Illinois has no interest in applying its own distribution scheme to these proceeds because it would not further the Illinois policy favoring equitable apportionment based upon the damages each beneficiary sustained.

■■ Michigan has the only significant contacts with the dispute here. The suit was originally brought in Michigan under Michigan law, was ultimately settled in Michigan, and the recovery obtained reflects the Michigan law of damages, not Illinois'. Michigan's interest in the distribution of proceeds recovered under its wrongful-death statute is evidenced by the provisions in its statute regulating this matter and the underlying policies which would be furthered through their application to the present case, namely, the equitable distribution of the proceeds in a manner consistent with each beneficiary's loss. Accordingly, we find that Michigan has the most significant contacts with this dispute and Michigan law should control the distribution.

In summary, we hold: (1) the proceeds are not an asset of the estate and therefore cannot pass under our intestacy laws to the surviving spouse; (2) the distribution provisions of the Illinois Wrongful Death Act were intended to apply only to recoveries obtained under our statute; and (3) Michigan law should control the distribution of proceeds recovered under the Michigan wrongful-death statute because Michigan has the most significant contacts with the dispute.

In view of the foregoing, we vacate the order of the trial court holding Illinois law should control the distribution, and remand for further proceedings.

Judgment vacated; cause remanded.

McGLOON and O'CONNOR, JJ., concur.