Paul L. **FRENCH**, Plaintiff–Appellant,

v.

**BEATRICE FOODS, CO.,**
Defendant–Appellee.

No. 87–2735.

United States Court of Appeals,
Seventh Circuit.

Argued May 23, 1988.
Decided Aug. 8, 1988.

James B. McCabe, Rolling Meadows, Ill., for plaintiff-appellant.

Jean F. Holloway, Sidley & Austin, Chicago, Ill., for defendant-appellee.

Before CUDAHY, RIPPLE, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Appellant, Paul L. French filed an action for retaliatory discharge in the Northern District of Illinois against his former employer, Beatrice Foods Co.—the appellee. French relied on diversity of citizenship as a basis for jurisdiction in the district court. Beatrice filed a motion to dismiss the complaint arguing that the substantive law of Alabama, which was the appropriate law to apply in this action, did not recognize an action for retaliatory discharge. The district court agreed that under Illinois conflict of law principles, Alabama's substantive law should be applied to this action. Finding that Alabama does not recognize the tort of retaliatory discharge the district court dismissed French's suit for failure to state a claim. We affirm.

In his complaint, French alleged that he was hired by Beatrice in 1957 and began a successful career in management. Eventually, in 1978, due to his exemplary performance, French was promoted to the position of general manager at a dairy plant in Gadsen, Alabama.

During the course of French's tenure in Alabama, his plant was audited. French alleged that as a result of his cooperation with the auditors, the auditors discovered that Beatrice was attempting to circumvent a 1972 consent decree prohibiting it from engaging in anticompetitive behavior. Consequently, French alleged that his relationship with Beatrice began to deteriorate.

According to the allegations of French's complaint, he was placed on special assignment by the Eastern Dairy Region President on February 1, 1982. Although it is not entirely clear from the complaint, this apparently occurred in Alabama where French resided and where his dairy plant was located.

On February 4, 1982, at a meeting which took place at Beatrice's Chicago world headquarters, the president of the Dairy Division advised French that "I would be less than candid with you if I told you that there would be another position for you."

Nevertheless, French avers that he continued to be employed by Beatrice, at the Alabama plant, until April 30, 1982, at which time his employment was terminated. French then sued Beatrice claiming he was wrongfully discharged in retaliation for his assistance in the audit of his plant which revealed Beatrice's alleged violation of the consent decree.

French alleged that because Beatrice had world headquarters in Illinois and it was a resident of both Illinois and Delaware, and because he was a resident of Virginia, at the time the suit was filed, the parties' citizenship was diverse and the Illinois district court had subject matter jurisdiction.

In response, Beatrice filed a motion to dismiss arguing that although the district court in Illinois had jurisdiction, the court was required to apply the substantive tort law of Alabama as the majority of events described in the complaint occurred in Alabama. Since Alabama law did not recognize the tort of retaliatory discharge, French had failed to state a claim.

French responded by arguing that the place of the last event causing his injury (in this case, the loss of his job) controlled which state's laws should be applied. French contended that this last event occurred at the Chicago offices on February 4, 1982, when he was told there would be no other position for him. Thus, the event leading to his discharge occurred in Illinois and Illinois law, which recognizes the tort of retaliatory discharge, applied.

Beatrice, on the other hand, pointed to French's complaint in which he alleged that every activity leading to his discharge, with the exception of the February 4th meeting, took place in Alabama. Moreover, French was not actually terminated until April 30, 1982, more than two months after his conversation at the Chicago headquarters. Thus, the last event, resulting in his injury, occurred in Alabama and consequently, Beatrice argued, Alabama law was controlling.

The district court agreed with Beatrice. Noting that it was required to adhere to the conflict of laws provisions of the forum

state, in this case, Illinois, the court applied a "significant contacts" test in determining which state's laws controlled this action. The court found that the most significant contacts were in Alabama despite the fact that Beatrice was headquartered in Illinois. Finding that Alabama does not recognize the tort of retaliatory discharge, the court granted Beatrice's motion to dismiss.

On appeal, French argues the district court was required to accept all of the allegations of his complaint as true for purposes of deciding the motion to dismiss. French contends that because he never alleged he was fired in Alabama or that his employment relationship with Beatrice was centered in Alabama, the court must have relied on Beatrice's characterization of the facts in reaching these conclusions. He argues that only by making findings contrary to the complaint was the district court able to dismiss plaintiff's action. Additionally, French submits that the actual event which led to his injury, was his February 4, 1982, conversation with Illinois management. Thus, Illinois law should have been applied in any event.

The parties agree that in a diversity action, the district court is required to look at the conflict of laws principles of the state in which it sits to determine which state's substantive law is controlling. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Moreover, under Illinois law, it is well-settled that in a tort action, the courts apply a most-significant-contacts test to determine which state's laws apply. Under that test, "The local law of the state where the injury occurred should determine the rights and liabilities of the parties ..." *Ingersoll v. Klein*, 46 Ill.2d 42, 45, 262 N.E.2d 593, 595 (1970), unless another state has a more significant relationship to the occurrence or the parties. *Id.; Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 526 (7th Cir.1981).

In determining whether another state has a more significant relationship with the litigation than does the place of injury, the contacts to be considered include the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered.

*Id.*

■ Applying these principles to French's complaint in this case and construing the allegations in the complaint in a light most favorable to him, as is appropriate on an appeal of a decision granting a motion to dismiss, *Ricci v. Chicago Mercantile Exchange*, 447 F.2d 713, 715 (7th Cir.1971), *aff'd on other grds.*, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973), it is clear that Alabama law must be applied.

The place of injury (the loss of French's job) was Alabama. In Paragraph 15 of the complaint, French alleged that he returned to the Alabama plant and resumed working for Beatrice until April 30, 1982, at which time he was terminated. Both the actual loss of the job and the cause of the injury, the termination, occurred in Alabama. Additionally, the alleged events leading to the termination, the audit and plaintiff's assistance to the auditor, occurred in Alabama.

Although the statement made by Beatrice management in Chicago, regarding French's future employment, coupled with French's special assignment in *Alabama* clearly foreshadowed the end of his employment, French admits he returned to work in Alabama for two months before he was actually terminated. We, therefore, cannot avoid concluding that the job loss occurred in Alabama. Theoretically, if the first sign of what was going to happen constituted his termination, then French's placement on special assignment in Alabama could also be deemed the decisive event. We do not believe that either prophetic event—the special assignment or the February 4th conversation—constituted the actual injury or even the event causing the injury in this case. The injury alleged was French's wrongful discharge which occurred in Alabama as alleged in his complaint. The events leading to the discharge, the audit and plaintiff's actions in aiding the auditors, also occurred in Alabama.

Further, although French is now a resident of Virginia, at the time of the events described in his complaint, he resided in Alabama. The parties' employment relationship was also centered in Alabama where French worked as a plant manager starting in 1978. Thus, based on all the indicia of significant contacts, as set forth in *Pittway* and *Ingersoll*, Alabama law applies. It cannot be any simpler.

█ Alabama courts do not recognize the tort of retaliatory discharge. *Jones v. Ethridge,* 497 So.2d 1107 (Ala.1986). Consequently, French's complaint fails to state a claim for which relief can be granted unless, as he claims, Alabama law is morally repugnant to Illinois law, in which case French claims Illinois law is controlling. French argues that by recognizing the tort of retaliatory discharge in cases where an employee is discharged for refusing to break the law or for revealing the employer's illegal activities, Illinois has expressed a public interest in promoting law-abiding behavior. French claims that Alabama, on the other hand, has repeatedly refused to follow suit and thereby, in effect, permits an employer to brazenly fire employees who are following the law. Alabama's position is therefore, clearly repugnant to Illinois' policy and as such, Illinois courts need not follow Alabama law.

In response, Beatrice states that even in Illinois, a cause for retaliatory discharge is available only in a very limited number of situations. Only where a "matter ... [strikes] at the heart of an [Illinois] citizen's social rights, duties, and responsibilities" will the tort be allowed. *Price v. Carmack Datsun, Inc.,* 109 Ill.2d 65, 68, 92 Ill.Dec. 548, 549–60, 485 N.E.2d 359, 360–61 (1985). Beatrice points out that even if French's allegations that he revealed its failure to comply with the consent decree are true; such a violation and his subsequent revelation do not affect Illinois or its citizens.

By recognizing a claim for retaliatory discharge when the employment relationship is centered in Illinois, the Illinois courts have expressed their concern about those who are discharged for attempting to enforce a public policy, defined in *Palmateer v. Int'l Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981) as:

> what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions.

52 Ill.Dec. at 15, 421 N.E.2d at 878. Illinois courts have not, however, thereby mandated that all other states must do the same. In other words, although Illinois public policy affects suits which are brought under Illinois law, Illinois law does not override, as morally superior, the laws of another state. Where another state has more significant contacts with an employment relationship, Illinois courts would apply the law of that state which governs that relationship.

For the foregoing reasons, the district court's dismissal of this action pursuant to Fed.R.Civ.P. 12(b)(6) is AFFIRMED.