Martha YORK, Plaintiff,

v.

**GLOBE LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.**

No. 89–1042.

United States District Court, C.D. Illinois.

March 7, 1990.

Brian A. Kuehn, Peoria, Ill., for plaintiff.

Michael R. Lied, Peoria, Ill., for defendant.

## ORDER

MIHM, District Judge.

Before the Court is a Motion for Partial Summary Judgment by the Defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure on Count II of the Plaintiff's Complaint. After considering all of the pleadings, this Court grants summary judgment as to Count II.

## BACKGROUND FACTS

The Defendant, Globe Life and Accident Insurance Company, is incorporated in the State of Delaware, has its principal place of business in the State of Oklahoma, and is listed as a foreign corporation in the State of Illinois. The Plaintiff is a resident and citizen of the State of Illinois.

In Count II, the Plaintiff alleges that on March 20, 1988 and also on May 19, 1988, the Plaintiff made application to the Defendant for certain insurance policies. The Plaintiff claims that the applications were made to the Defendant's agent, William Nelson, and that Nelson traveled to the Plaintiff's home in Lacon, Illinois for purposes of obtaining the applications and selling the two policies of insurance. The Plaintiff asserts that the forms utilized for applying for insurance were those printed and prepared by the Defendant.

The Plaintiff contends that William Nelson, in his own handwriting, filled out the two application forms based on answers to questions given to the Plaintiff. The Plaintiff claims that she told Nelson that she had in the past been diagnosed as a borderline diabetic and that she had sought treatment with a chiropractor for certain back problems. The Plaintiff asserts that Nelson elected not to have her list the prior

problems with diabetes and the back problems on the two applications for insurance.

The Plaintiff next claims that the two applications for policies of insurance were accepted along with premiums which were tendered and that two policies of insurance were issued by the Defendant. The Plaintiff then contends that she suffered accidents and illnesses which resulted in medical and hospital bills of approximately $40,000. The Plaintiff claims that the Defendant had a duty to deal in good faith in the handling of Plaintiff's claims and that the Defendant failed to deal in good faith but instead dealt in bad faith breaching a duty to the Plaintiff. The Plaintiff claims $40,000 in compensatory damages and $1,000,000 in punitive damages.

## A. CONFLICTS OF LAWS ANALYSIS

The Defendant in this case contends that the law of Illinois applies, and the Plaintiff contends that the law of Oklahoma applies.

Illinois conflicts of law rules apply in this case because it is well settled that a federal court sitting in diversity is required to apply the choice of law rules of the state in which the court sits. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

The Plaintiff asserts that the Seventh Circuit has expressly recognized that Illinois has adopted the most significant contacts rule in contract cases where the place of performance and execution were in different forums. *Florida Risk Planning Consultants, Inc. v. Transport Life Insurance Co.*, 732 F.2d 593 (7th Cir.1984). In *Palmer v. Beverly Enterprises*, 823 F.2d 1105 (7th Cir.1987), the Seventh Circuit stated that the significant contacts test would apply even where there was a different place of contracting and performance.

Further, the Plaintiff asserts that the *Palmer* court set out the contacts which a court should use to determine which forum has the most significant relationship to the dispute in question. These contacts include: the place of contracting, place of negotiation, location of the subject matter of the contract, and the domicile, residence, place of incorporation, and business of the parties.

Initially, the Defendant asserts that the Plaintiff's discussion of Illinois choice of law rules in contract cases is not particularly helpful because Count II is a tort claim alleging a breach of duty of good faith. This Court agrees with that assertion.

Next, the Defendant agrees with the Plaintiff that the Seventh Circuit has read Illinois case law as having adopted the "most significant contacts" rule for tort cases. The Defendant claims that under this rule the law of the state where the injury occurred is applied unless another state has a more significant relationship to the occurrence or to the parties. *French v. Beatrice Foods Companies*, 854 F.2d 964 (7th Cir.1988); *cf., Edwardsville National Bank v. Marion Laboratories*, 808 F.2d 648 (7th Cir.1987).

In response to the contention of the Defendant that the Illinois choice of law rules in contract cases are not particularly helpful, the Plaintiff argues that contracts choice of law rules involve a similar progression as tort choice of law rules and both are analyzed in Illinois using the most significant contacts test. While this may be true, this does not mean that the same factors will be applied in both cases. This Court concludes that the policies and principles which govern the factors most relevant to tort and contract cases can often be different and often the factors must be given different weight.

The Defendant further states that, in *French*, 854 F.2d at 966, the Seventh Circuit noted that in determining whether another state has a more significant relationship with the litigation than does the place of injury, the contacts to be considered include the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation, and place of business of the parties; and the place where the relationship, if any, between the parties is centered.

The Plaintiff contends that under the test in *French, Id.* at 966, Oklahoma law should be applied. The Plaintiff asserts that, although the Defendant views the site

of the injury as where the medical bills originated, the injury really at issue is not how the Plaintiff was physically injured, but how Globe Insurance agents and officers determined that the Plaintiff's claim would not be honored because of the neglectful or willful actions of its agents.

There is a good deal of support for the Plaintiff's position that the law of the place where the injury was occasioned or inflicted governs such that the law of the place where the act or omission claimed as a basis of a tort governs in determining whether there is a tort as a result of such conduct. 34 ILP Torts § 6 (*see* especially footnotes 35 and 36). The cases cited in these footnotes are rather old; however, their conclusion is that the law of the place of the wrong governs.

In this case, there are a couple of problems with Plaintiff's analysis in determining where the wrong or injury occurred. First, the real wrong or act of bad faith alleged seems to be the fact that the insurance agent failed to record the fact that the Plaintiff had had previous problems with her health. If this is the only wrongful act, then the wrongful act clearly occurred in Illinois.

Further, in this case the Plaintiff was physically injured in Illinois, the Plaintiff's medical bills were incurred in Virginia or Illinois, and as the Defendant contends, any collection action causing loss to the Plaintiff would also take place in Illinois as would any mental anguish or embarrassment. In addition, although the Defendant is incorporated and does business in Oklahoma, the Defendant also does business in Illinois and the relationship of the parties was clearly centered in Illinois as the Defendant's salesman contacted the Plaintiff in Illinois. Also, of course, the Plaintiff resides and is domiciled in Illinois. Although one could argue that in a bad faith tort claim the injury occurred in the state where the insurer's administrative people decided whether or not to honor the claim, as stated earlier, most of the factors in this case, including the place of injury or wrong, weigh in favor of applying Illinois law. In *Pittway v. Lockheed Aircraft*

*Corp.*, 641 F.2d 524, 526–527 (7th Cir.1981), the court noted that the "most significant contacts relationship" test only applies a presumption that the local law of the state where the injury occurred governs the rights and liabilities of the parties. This presumption applies unless another state has a more significant relationship to the occurrence or parties involved. *Id.* The factors applied to determine whether this presumption is overcome are the same factors this Court has already applied and the same factors which were applied in *French*, 854 F.2d at 966 (*see* the factors given earlier on page 342 of this opinion). This Court believes that, even if the presumption were applied to this case, Illinois law should apply as the relationship of the parties was clearly centered in Illinois.

### Interest Analysis

The Defendant further contends that mere contact counting is not the sole test under Illinois law anyway. In the case of *Estate of Barnes*, 133 Ill.App.3d 361, 88 Ill.Dec. 438, 442, 478 N.E.2d 1046, 1050 (1st Dist.1985), the court stated that Illinois courts have rejected a "contact counting" approach in favor of a more sophisticated "interest analysis" construction of the Restatement of Law 2d and the "the most significant" contacts test. The *Barnes* case, *Id.*, 88 Ill.Dec. at 443, 478 N.E.2d at 1051, *quoting Mitchell v. United Asbestos Corp.*, 100 Ill.App.3d 485, 55 Ill.Dec. 375, 426 N.E.2d 350 (1981), noted that what is required is a consideration of the interest and public policies of potentially concerned states in regard to the manner and extent of such policies as they relate to the transaction at issue. The court in *Barnes*, *Id.*, 88 Ill.Dec. at 443, 478 N.E.2d at 1051, stated that, in construing § 6 and 145 of the Restatement of Law 2d, Conflicts of Law, together in an interest analysis, the court uses a three step process for conflicts analysis which goes as follows:

> First, the issue is isolated and the conflict defined. Next, the policies embraced and the laws in conflict are identified. Finally, contacts of the respective jurisdictions are examined in order to determine which has a superior connec-

tion with the occurrence and thus would have a superior interest in having its policy or law applied. (citations omitted). *Id.*

### Interest Analysis Applied To This Case

■ The conflict in this case is between Oklahoma law which recognizes an action in tort for bad faith dealings with regard to insurance contracts and Illinois law which provides specific statutory remedies for similar bad faith acts of an insurance company. *See,* Ill.Rev.Stat. ch. 73, § 767.

Both states have an underlying policy of encouraging good faith and prompt handling of insurance claims. Oklahoma provides a common law remedy permitting recovery of compensatory and punitive damages, with no stated dollar limitations. In contrast, Illinois law permits recovery of taxable costs, attorney's fees, and certain other sums which are specifically limited as set forth in the statute.

The Defendant notes that the Seventh Circuit in *Kush v. American States Insurance Co.,* 853 F.2d 1380 (7th Cir.1988), in talking about the Illinois insurance statute, stated that:

> Section 155 may not be perfect. It strikes a balance between the individual insured party's need for compensation and the broad societal interest in avoiding excessive damage awards that result in price increases to all policyholders, perhaps making some insurance prohibitively expensive for the average consumer. Kush may wish the balance struck another way, but he must address that argument to the legislature.

The Plaintiff contends that, in *Mitchell,* 55 Ill.Dec. 375, 426 N.E.2d 350, in deciding which state's law to apply in that case, the court stated that generally a state's interest in limiting wrongful death damages is to protect defendants from excessive financial burdens and that this interest is primarily local in that the state seeks to protect its own residents. *Id.,* 55 Ill.Dec. at 382–385, 426 N.E.2d at 357–360. The Plaintiff is essentially arguing that the application of law in this case affects only a foreign corporation rather than a local business or corporation.

The problem with the argument of the Plaintiff is that, even though the Defendant is not a local corporation, the burdens on other people in paying insurance, which are certainly local, would go up if large damage awards could be awarded against out-of-state insurance defendants.

Next, the Plaintiff argues that the result set out in *Kush,* 853 F.2d 1380, may be subject to constitutional and other attack. *See,* Mattis, Brian, *Punitive and Compensatory Damage in Illinois Insurance Companies Cases: Some Constitutional Questions,* 73 Ill.B.J. 206 (1984). This Court's reaction to that argument is that this Court is bound by the Seventh Circuit's interpretation of Illinois law.

Lastly, the Plaintiff argues that, even if Illinois law provides an exclusive remedy for those injured by tortious bad faith of insurers, then Illinois could hardly be said to have as great an interest in deterrence because it has already chosen to limit recovery against an insurer. The Plaintiff argues that because Oklahoma has provided no such statutory limitation, it has a greater interest in deterring the insurer from engaging in bad faith practices to the detriment of insureds.

The problem with this argument is that the State of Illinois might have determined that it has a greater interest in protecting Illinois citizens from paying higher premium rates which result from high damage awards and litigation costs when insurance companies are sued for bad faith settlement claims. The policy interests of Illinois, although different, are no less legitimate than Oklahoma's policy interests. To achieve Illinois policy goals, the Illinois statute should apply to Illinois citizens who have bad faith insurance claims, regardless of whether they have in-state or an out-of-state insurance company because the effect on insurance rates would be the same. Even further, it seems clear that Oklahoma's policy of allowing suits for bad faith torts is to protect the insureds of its state and not the insurance companies; therefore, even under this policy analysis

Illinois law should apply as the Plaintiff is not an insured of the State of Oklahoma.

Again, in *Kush*, 853 F.2d at 1385, the Seventh Circuit quoted the following passage from *Combs v. Insurance Company*, 146 Ill.App.3d 957, 100 Ill.Dec. 525, 497 N.E.2d 503 (1st Dist.1986):

> The Illinois legislature by virtue of these enactments, has clearly manifested its intent to keep this matter within its power and control.

In other words, the *Combs* court, after tracing the history of the Illinois insurance statute, determined that the statute preempted claims of bad faith against an insurance company. The *Combs* case further supports the proposition that Illinois has a strong policy favoring limitation of bad faith claims against insurance companies in order to reduce the rates that everyone pays.

This Court concludes that Illinois law must govern because most of the contacts favor application of Illinois law, because Illinois has a strong policy to prevent large claims against insurance companies for bad faith claims, and because it appears that the real injury to the Plaintiff was caused in Illinois by the alleged fraudulent conduct of the insurance agent.

### WHETHER COUNT II IS PREEMPTED BY ILLINOIS LAW

The Defendant contends that Count II, which alleges a breach of duty of good faith and fair dealing, is preempted by the provisions of Ill.Rev.Stat. ch. 73, § 767; therefore, they contend that Count II should be dismissed. The Plaintiff, on the other hand, argues that Illinois law recognizes a separate tort of bad faith in insurance law and further recognizes a claim for punitive damages arising from such a claim.

The Plaintiff cites *Kelly v. Stratton*, 552 F.Supp. 641 (N.D.Ill.1982), *Roberts v. Western–Southern Life Insurance Co.*, 568 F.Supp. 536 (N.D.Ill.1983), *Horton v. Westfield Insurance Co.*, 84–1330 (unpublished opinion C.D.Ill.1985), and an Illinois Bar Journal article entitled "Punitive and Compensatory Damages in Illinois Insurance Cases: Some Constitutional Questions," 73 Ill.B.J. 206 (1984) for the proposition that Illinois recognizes a separate tort of bad faith in insurance claims and recognizes a claim for punitive damages arising from such a claim. Further, the Plaintiff contends that the Defendant cannot rely upon *Kush v. American States Insurance Company*, 853 F.2d 1380 (7th Cir.1988) because the statements in *Kush* regarding preemption by § 155 of the Insurance Code are dicta and because the *Kush* decision itself makes it clear that there was only a cursory overview of the issue. *Id.* at 1384–1386. In addition, the Plaintiff contends that the Seventh Circuit failed to consider the legislative history of § 155 as well as the *Lynch, Kelly,* and *Roberts* decisions. Lastly, the Plaintiff contends that Illinois state courts have recognized the cause of action for the tort of bad faith before the amendment of the Insurance Code in 1977. *Ledingham v. Blue Cross Plan for Hospital Care*, 29 Ill.App.3d 339, 330 N.E.2d 540 (5th Dist.1975); and *Lynch v. Mid–America Fire & Marine Insurance Co.*, 94 Ill. App.3d 21, 49 Ill. Dec. 567, 418 N.E.2d 421 (4th Dist.1981).

The Defendant first notes that the Fifth District Court of Appeals for Illinois has abandoned its earlier position in *Ledingham*, 29 Ill.App.3d 339, 330 N.E.2d 540, finding preemption at least as to punitive damages. *Kohlmeier v. Shelter Insurance Co.*, 170 Ill.App.3d 643, 121 Ill. Dec. 288, 525 N.E.2d 94 (5th Dist.1988). Moreover, the Defendant notes that Judge Moran, in *Barr Company v. Safeco Insurance Co.*, 706 F.Supp. 616 (N.D.Ill.1989), has rejected the argument that the position taken by the Seventh Circuit in *Kush*, 853 F.2d 1380, is merely dicta, finding that the court was bound to follow *Kush* on the issue of preemption. *c.f. W.E. O'Neill Construction Co. v. National Union Fire Insurance Co.*, 721 F.Supp. 984 (N.D.Ill.1989).

Although there is some conflict in the case law as to whether or not such a claim is preempted by § 155 of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, § 767, this Court agrees with the analysis of the Defendant. Compare *e.g., Thiel v. Pruden-*

*tial Insurance Company of America*, 661 F.Supp. 647 (N.D.Ill.1985) (statute preempts common law claim for punitive damages for refusal to pay medical insurance benefits) with *Sheinfeld v. American Family Mutual Insurance Co.*, 624 F.Supp. 698 (N.D.Ill.1985) (statute does not preempt common law claim for compensatory damages for breach of duty of good faith and fair dealing).

In *Kush*, 853 F.2d at 1384–1385, the Seventh Circuit, in the context of an intentional infliction of emotional distress claim, upheld the dismissal of a complaint for failure to state a claim. The court noted that, even if they disregarded the corporate entity and held that Kush was the de facto insured, the claim was preempted by § 155 of the Illinois Insurance Code. The language of the *Kush* case is phrased in terms of a holding in the alternative rather than in terms which would indicate that it was dicta.

Contrary to the Plaintiff's assertions, the court in *Kush*, although noting that the Illinois Supreme Court had not decided the precise question, stated that several Illinois Appellate Courts have found that § 155 of the Insurance Code preempted claims based upon an implied duty of good faith and fair dealing. *Id.* at 1385. More importantly, the Seventh Circuit case considered the *Combs* case, 100 Ill.Dec. 525, 497 N.E.2d 503, which traced the history of § 155 and concluded that the Illinois legislature had clearly manifested its intent to preempt any action which alleged nothing more than conduct prescribed by § 155. *Id.*

Furthermore, this Court agrees with the policy analysis of the Seventh Circuit in which it concluded that the Illinois legislature had struck a balance between the individual insured party's need for compensation and the broad societal interest in avoiding excessive damage awards that result in price increases to all policyholders making insurance prohibitively expensive for the average consumer. *Id.* at 1386.

In addition, in light of the *Kush* decision, Judge Moran has found that tort claims seeking recovery of both punitive damages and compensatory damages to be preempted by § 155 in the Insurance Code, Ill.Rev. Stat. ch. 73, § 767. *See, Becker v. United Security Life Insurance Company of Illinois*, 1988 WL124139, 1988 U.S. District LEXIS 12878 (N.D.Ill. November 15, 1988); *Barr Company v. Safeco Insurance Company of America*, 706 F.Supp. 616 (N.D.Ill. 1989). *See, also, Combs v. Insurance Company of Illinois*, 146 Ill.App.3d 957, 100 Ill.Dec. 525, 497 N.E.2d 503 (1st Dist. 1986) (claim for intentional infliction of emotional distress, framed in terms of duty of good faith, preempted by Insurance Code § 155); *Kohlmeier v. Shelter Insurance Co.*, 170 Ill.App.3d 643, 121 Ill.Dec. 288, 525 N.E.2d 94 (5th Dist.1988) (court of appeals declines to follow its earlier case of *Ledingham v. Blue Cross*, 29 Ill.App.3d 339, 330 N.E.2d 540, and finds that § 155 of the Insurance Code preempts common law tort claims seeking recovery of punitive damages).

In conclusion, this Court concludes that § 155 of the Illinois Insurance Code preempts bad faith insurance claims based on an implied duty of good faith and fair dealing; therefore, Count II of the Plaintiff's Complaint must be dismissed. In addition, although there are allegations which could constitute fraudulent conduct on the part of the Defendant's insurance agent, this Court finds that Plaintiff's claim must be dismissed as there are absolutely no factual allegations that the insurance company failed to handle the Plaintiff's insurance claim in good faith.

## CONCLUSION

This Court grants summary judgment on Count II of the Plaintiff's Complaint insofar as it attempts to state a cause of action under Illinois law based upon a bad faith handling of the Plaintiff's insurance claims.