Peter A. **GINOCCHIO** and Jeanette A. Ginocchio, Plaintiffs,

v.

**AMERICAN BANKERS LIFE ASSURANCE COMPANY OF FLORIDA,** Defendant.

No. 94 CV 32.

United States District Court, N.D. Illinois.

June 27, 1995.

Stephen A. Brundage, Law Offices of Stephen A. Brundage, Wheaton, IL, for plaintiffs.

Robert Scott Bell, Jr., Cosby & Bell, Chicago, IL, Robert E. Wagner, Michelle M. Simcik, Robert E. Wagner & Associates, Springfield, IL, for defendant.

## MEMORANDUM ORDER AND OPINION

GETTLEMAN, District Judge.

Plaintiffs Peter A. Ginocchio ("Peter"), and his wife Jeannette A. Ginocchio ("Jeannette"), bring this diversity action against defendant American Bankers Life Assurance Company of Florida alleging that plaintiffs are entitled to certain disability insurance benefits. Plaintiffs' first amended complaint asserts claims against defendant for breach of contract (Count I), breach of defendant's duty of good faith and fair dealing (Count II), improper claims practices in violation of the Illinois Insurance Code, 215 ILCS 5/154.5, 215 ILCS 5/154.6, and 215 ILCS 5/155 (" § 155") (Count III), and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 and 815 ILCS 505/10a (Count IV). Plaintiffs seek insurance benefits, costs, attorney's fees, damages for emotional distress, and punitive damages.

Before the court is defendant's motion for summary judgment along with the parties' supporting briefs, affidavits, deposition transcripts and Local Rule 12(M) and 12(N) statements. Defendant moves for summary judgment asserting three arguments: (1) Counts I and III should be dismissed based on the unambiguous terms of the insurance policy; (2) Count II should be dismissed because plaintiffs' claim for defendant's breach of its duty of good faith and fair dealing is preempted by their § 155 claim in Count III; and, (3) summary judgment in favor of defendant on Count IV is appropriate because the terms of the policy are unambiguous, and plaintiffs fail to allege any conduct by defendant that would constitute consumer fraud or deceptive trade practices. For the reasons stated below the court grants in part and denies in part defendant's motion for summary judgment.

### Facts

On June 29, 1989, plaintiffs entered into a mortgage and promissory note (the "Loan"), with Transamerica Financial Services, Inc. ("Transamerica"), in which plaintiffs granted Transamerica a mortgage on plaintiffs' home in Bolingbrook, Illinois. In connection with

the Loan, plaintiffs purchased a credit disability insurance policy (the "Policy") that covered plaintiffs' Loan payments in the event Peter became disabled. Mary Drew ("Drew"), a Transamerica employee, was the agent that met with plaintiffs, closed the Loan, and sold them the Policy.

To purchase the Policy, plaintiffs signed a one page, double sided Insurance Statement (the "Statement"). The Statement named Peter as the primary borrower. On the front of the Statement, at the top of the page, there are boxes in which the "Term of Loan" is noted as 180 months, and the "Term of Insurance" is noted as 36 months. In the middle of the page the Statement reads: *"DISABILITY INSURANCE:* [ ] SCHEDULED LOAN TERM -or- [x] <u>36</u> (months) TRUNCATED TERM."[1] On the reverse of the Statement the form provides in part: "The insurance coverage will terminate on: 1) the scheduled expiration date; or 2) prepayment of the indebtedness."

In April 1990, Peter was diagnosed with acute angina due to coronary artery occlusions, and became permanently disabled. Pursuant to the Policy, defendant started paying plaintiffs' monthly Loan obligations on June 20, 1990. During the period of time that defendant made these payments it sent plaintiffs claim renewal notice letters ("Claim Renewals").

Plaintiffs received a Claim Renewal dated February 19, 1992, written by Paul Leach ("Leach"), an employee in defendant's financial claims department. The Claim Renewal provided in part:

> Your claim has been approved for a period of 005 month(s). Payment will be forwarded automatically each month to your creditor.
>
> Another continuing claim form will be sent 07/27/92. Upon receipt, promptly complete and return the claim form to American Bankers Insurance Group. We will review the form to determine whether payments to your creditor should be continued. No additional payments will be issued until a completed form is received

and we have determined that you are eligible for further payments.

\* \* \* \* \* \*

If you do not receive a continuing claim form during the month of July, please contact us as soon as possible.

Plaintiffs then received a letter from defendant dated June 29, 1992, written by Leach, alerting them that their Policy expired July 5, 1992. The letter notified plaintiffs that defendant had paid Transamerica through July 5, 1992, and that no further benefits were due under the Policy. Plaintiffs filed their original complaint in the Circuit Court of Dupage County on December 2, 1993, which defendant removed to this court. Plaintiffs filed the instant first amended complaint on April 19, 1994.

### Discussion

Under Fed.R.Civ.P. 56(c), a court should grant a summary judgement motion if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When reviewing a summary judgement motion, the court must read the facts in a light most favorable to the non-moving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), and must give the non-movant the benefit of all reasonable inferences to be drawn in its favor. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970).

█ The central argument supporting defendant's motion is that the terms of the Policy are unambiguous, and based on those terms defendant was liable for plaintiffs' dis-

---

1. The "x" in the box before the "Truncated Term" and the number "36" are added to a preprinted form.

ability payments for only the 36 month "term" noted on the Statement. The ambiguity of a contract is a question of law for the court to determine. *R.T. Hepworth Co. v. Dependable Ins. Co, Inc.*, 997 F.2d 315, 318 (7th Cir.1993).

In *Hepworth*, the Seventh Circuit defined two ways in which a contract can be considered "ambiguous":

> [E]ither it is internally inconsistent or unclear (this is internal ambiguity), or it is ambiguous in light of extrinsic evidence (this is external ambiguity). In the latter case, even though the contract appears to be complete and understandable to someone who can read English but does not know the background of the negotiations, further inquiry—that is, inquiry beyond merely studying the words of the document—reveals a genuine dispute about the contract's meaning.

*Id.*

 Illinois courts have largely rejected the traditional "four corners rule," and under Illinois law courts may look to extrinsic evidence to interpret the contract's meaning. *Id.;* citing, *Stamatakis Industries, Inc. v. King*, 165 Ill.App.3d 879, 887, 117 Ill.Dec. 419, 424, 520 N.E.2d 770, 775 (1st Dist.1987). However, extrinsic evidence cannot be used to create a direct conflict with the terms of the contract. *Hepworth*, at 318; 810 ILCS 5/2–208(2). Ambiguity can be found based either on contractual language or "some yawning void * * * that cries out for an implied term." *Hepworth*, at 318.

The parties agree that the Statement plaintiffs signed indicates that the "term" of Peter's credit disability insurance is 36 months. Plaintiffs assert, however, that the Policy is ambiguous because it fails to explain: (1) defendant's liability under the Policy for plaintiffs' Loan payments through the life of the mortgage in the event Peter became disabled within the 36 month term; and (2) the requirement and terms of renewing the policy at the end of the first 36 months in the event Peter became disabled within the original 36 month term of the Policy. Plaintiffs further assert that Drew's statements and defendant's February 19, 1992, letter are consistent with plaintiffs' interpretation of the Policy's terms.

Addressing the first issue, there is no explanation of the extent of defendant's liability if the insured becomes disabled within the term of the Policy. Defendant asserts that the fact that the Statement specifies in three places that the term of the insurance is 36 months unambiguously defines the extent of its liability. The court disagrees and finds that the Policy is ambiguous because a reasonable interpretation of the language of the Statement could be that the insured is paying for coverage of the possibility that he or she will become disabled within 36 months, in which event the insurer would be liable for the remaining Loan payments. See, *Central Illinois Public Service Co. v. Allianz Underwriters Ins. Co.*, 240 Ill.App.3d 598, 602, 181 Ill.Dec. 82, 84, 608 N.E.2d 155, 157 (1st Dist. 1992) (where an insurance policy is subject to two reasonable interpretations it is considered ambiguous).

Addressing plaintiffs' second argument, the only mention of policy renewal is in a document called the "Group Master Policy" that provides in part:

> *Term of policy:* The term of this policy:
>
> 1. shall begin on the policy date: and
>
> 2. is for one year. It may be renewed by the payment of premiums.
>
> Either party may terminate this policy. Written notice must be given at least 30 days in advance.

Plaintiffs' policy term was for 36 months (three years). Plaintiffs were never notified by defendant about any required premium payments for its renewal. The Group Master Policy's reference to the term of the policy and its potential renewal does not explain whether renewal is necessary in the event the insured becomes disabled during the stated term of the policy.

Based on the evidence before it, the court finds that the insurance contract has a "yawning void" as to whether defendant's loan payments continue if the insured becomes disabled within the term period, and whether the insurer is required to renew the policy if he becomes disabled within the stat-

ed policy term.[2] Accordingly, the court finds that the terms of the policy are ambiguous and will examine extrinsic evidence to determine the meaning of the Policy's terms.[3]

■ To define the terms of the policy the court will consider extrinsic evidence that does not directly conflict with the language of the contract. In his deposition, Peter stated that at the time plaintiffs purchased the Policy Drew, acting as defendant's agent,[4] told them that if Peter became disabled during the 36 month term of coverage the policy would automatically renew itself every three years. (Peter Dep. 21.) Then in April 1990, shortly after Peter became ill, Jeannette called Drew to find out what plaintiffs needed to do to file a claim and what the insurance covered. Jeanette states that Drew explained that because Peter became disabled while he was insured the policy would automatically renew itself without any further premiums, throughout the life of the mortgage. (Jeanette Dep. 70–71)

Defendant does not attempt to dispute this testimony in its briefs. In her deposition, Drew did not recall what she had told plaintiffs when they first purchased the Policy. In answer to the question, "did you ever tell Jeannette that since Peter now was disabled during the term of that insurance that they would never have to make another payment?" Drew answered, "During the term of that insurance, they would not—that as long as they—he was under a doctor's care and they continued to fill out the continuing claim forms, they—the insurance should continue paying."

Defendant argues that based on the terms of the Certificate of Insurance, no agent can change or alter the terms of the insurance.

This argument begs the question. There is no language in the insurance contract that explains what happens in the event the insured becomes disabled within the term of the Policy. Drew's explanations appear to fill the "yawning void" in the contract rather than alter any specific written terms.

Based on the evidence before it, the court finds that the terms of the Policy are ambiguous, and that there is a genuine issue of fact as to defendant's liability under its Policy. Accordingly, the court denies defendant's motion for summary judgment on Counts I. Further, while it also appears that plaintiffs will not be able to prove their bad faith claim under § 155, the evidence stated above, taken in a light most favorable to plaintiffs, precludes entering summary judgment in defendant's favor on Count III.

To prevail on Count III, plaintiffs must show that defendant intentionally refused to pay benefits that it knew plaintiffs were entitled to, and knew that such a denial would cause harm to plaintiffs. *Johnson v. Safeco Insurance Co. of America*, 809 F.Supp. 602, 604 (N.D.Ill.1992). While there is no direct evidence that defendant was acting in bad faith in denying plaintiffs' claim, there is evidence that defendant might have been on notice that they were liable based on its agent's actions. As explained above, the evidence indicates that an agency relationship existed between defendant and Drew at the time the incidents involved in this action took place. Drew has not denied that she made statements that acknowledge defendant's liability to plaintiffs. Accordingly, the court denies defendant's motion for summary judgment on Count III at this time.

2. Common sense seems to contradict any economic reason why a borrower on a 15 year mortgage would purchase credit disability insurance that would pay benefits for at most three years.

3. Under Illinois law, ambiguities in a contract of insurance are construed against the insurer. *Illinois State Medical Ins. Services, Inc. v. Cichon*, 258 Ill.App.3d 803, 808, 196 Ill.Dec. 277, 281, 629 N.E.2d 822, 826 (3rd Dist.1994).

4. Both parties spend a great deal of time arguing whether Drew was acting as defendant's agent when she sold plaintiff the disability policy, and

advised them about its terms. In defendant's supplemental response to plaintiffs' first set of interrogatories, in response to the question, "State the relationship between an individual named Mary Drew and American Bankers on June 29, 1989," defendant responded, "Mary Drew was a soliciting agent for [defendant]." Further, Drew's employer, Transamerica Financial Services, had an active Agency Agreement in place with defendant at the time that the incidents alleged in the complaint took place. Accordingly, based on this evidence the court finds that Drew was acting as defendant's agent.

■ Defendant next asserts that § 155 preempts common law claims for breach of the implied duty of good faith and fair dealing.[5] *Buehler v. Home Life Insurance Co.*, 722 F.Supp. 1554, 1564 n. 16 (N.D.Ill.1989); see also, *Mazur v. Hunt*, 227 Ill.App.3d 785, 169 Ill.Dec. 848, 850, 592 N.E.2d 335, 337 (1st Dist.1992). Plaintiffs argue that the law is not settled on whether a common law bad faith claim is preempted by the Illinois Insurance code § 155, citing *York v. Globe Life and Accident Insurance Co*, 734 F.Supp. 340 (C.D.Ill.1990).

The Illinois Supreme Court has not considered the issue of whether § 155 preempts common law claims for breach of the implied duty of good faith and fair dealing. In *York*, the district court examined the split among the districts of the Illinois Appellate Court and, based on Seventh Circuit precedent, held that § 155 preempts common law claims based upon an implied duty of good faith and fair dealing. *York*, 734 F.Supp. at 345; citing, *Kush v. American States Insurance Co.*, 853 F.2d 1380, 1384–1386 (7th Cir.1988); Judge Moran in *Barr Company v. Safeco Insurance Co.*, 706 F.Supp. 616 (N.D.Ill. 1989).

In *Kush*, the Seventh Circuit considered the legislative history of § 155 and concluded that the Illinois legislature had clearly manifested its intent to preempt any action that alleges nothing more than a breach of the duty of good faith prescribed by that statute. 853 F.2d at 1385–1386. Thus, this court finds that as a matter of law, § 155 of the Illinois Insurance Code preempts plaintiff's common law bad faith claim asserted in Count II of the amended complaint. Accordingly, the court grants defendant's motion for summary judgment on Count II.

■ Defendant's third argument is that summary judgment in its favor on Count IV is appropriate because plaintiffs have failed to allege any conduct on behalf of defendant that constitute consumer fraud or deceptive trade practices. To establish a violation of the Consumer Fraud Act, plaintiffs must allege misrepresentation, concealment or omission of a material fact by defendant with the intent that plaintiffs rely on such conduct. *Obenland v. Economy Fire & Casualty, Co.*, 234 Ill.App.3d 99, 114, 174 Ill.Dec. 915, 924, 599 N.E.2d 999, 1008 (1st Dist.1992). Defendant argues that the terms of the policy are unambiguous, and that plaintiffs knowingly signed the agreement stating these terms.

As set forth above, the court finds that the terms of the policy are ambiguous. The court also finds that Drew was acting as defendant's agent during the incidents alleged in the complaint. Plaintiffs maintain that after Peter became disabled, Drew represented that the policy would automatically renew itself and they would not need to make any further payments. Further, viewing the evidence in a light most favorably to plaintiffs, the letter written by defendant's agent on February 19, 1992, can be construed as misrepresenting the cessation of the policy and concealing the fact that plaintiffs had to renew the policy. Based on the evidence before it, the court finds that plaintiffs have alleged a cause of action under the Illinois Consumer Fraud and Deceptive Trade Practices Act. Accordingly, the court denies defendant's motion for summary judgment on Count IV of plaintiffs' complaint.

### Conclusion

The court finds that the terms of defendant's liability under its disability Policy are ambiguous. Based on the depositions and evidence before it, the court finds that there

**5.** Section 155 provides in part:
(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
(b) $25,000;
(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

is a genuine issue of material fact as to plaintiff Peter Ginocchio's coverage under defendant's credit disability policy. Therefore, for the reasons as stated above, the court denies defendant's motion for summary judgment on Counts I, III and IV of the amended complaint. The court finds, as a matter of law, that plaintiffs' claim in Count II for breach of the common law duty of good faith and fair dealing is preempted by its claim in Count III under 215 ILCS § 155. Accordingly, the court grants defendant's motion for summary judgment on Count II.